**Lansing, Michigan**

# Opinion

Chief Justice:     Justices:
Robert P. Young, Jr.    Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

FILED MAY 30, 2012

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellant,

v                          Nos. 142442 and 142443

MARTEEZ DONOVAN LAIDLER,

     Defendant-Appellee.

BEFORE THE ENTIRE BENCH

MARKMAN, J.

The issue in this case is whether the death of a coperpetrator of a crime may be scored under offense variable (OV) 3, MCL 777.33, which concerns "physical injury to a victim." We conclude that a coperpetrator is properly considered a "victim" for purposes of OV 3 when he or she is harmed by the criminal actions of the charged party, in this case, defendant. Because we conclude that the coperpetrator's death constituted such a harm, we reverse in part the judgment of the Court of Appeals and reinstate defendant's sentence. The trial court properly assessed 100 points for OV 3 because the coperpetrator was harmed by the criminal actions of defendant.

## I. FACTS AND HISTORY

During the early morning hours of May 5, 2009, defendant and Dante Holmes attempted to break into a home owned by Matthew Richmond. Upon hearing the sound of breaking glass, Richmond instructed another occupant of the home to call the police, and proceeded to arm himself. As he approached the room from which the sound had originated, Richmond saw the window shades moving and a hand extend inside the window. He fired two shots, and one of these hit Holmes. A police officer responding to the call placed by the other occupant found Holmes suffering from a gunshot wound, with defendant standing next to him. Defendant admitted that he had been with Holmes when Holmes broke into the home. Holmes died the same day as a result of his wound.

Defendant was charged with first-degree home invasion, MCL 750.110a(2), and tried before a jury. At trial, the prosecutor argued that defendant had boosted Holmes up to the window, which was six feet off the ground. Defendant was convicted as charged, and the trial court sentenced defendant to a prison term of 48 months to 20 years. In arriving at that sentence, the trial court assessed 100 points under OV 3 for "injury to a victim."

Defendant appealed, arguing that Holmes, his coperpetrator, should not be considered a "victim" for purposes of OV 3. Although it affirmed defendant's conviction, the Court of Appeals agreed with defendant that OV 3 had been improperly scored and remanded for resentencing. *People v Laidler*, 291 Mich App 199, 204; 804 NW2d 866 (2010). Judge O'CONNELL concurred with the majority's decision to affirm defendant's conviction, but dissented with regard to the scoring of OV 3 and would have also affirmed defendant's sentence. *Id.* at 205 (O'CONNELL, P.J., concurring in part and

2

dissenting in part). The prosecutor sought leave to appeal and we ordered oral argument on the application for leave. *People v Laidler*, 489 Mich 903 (2011).

## II. STANDARD OF REVIEW

The interpretation and application of the sentencing guidelines present questions of law that we review de novo. *People v Cannon*, 481 Mich 152, 156; 749 NW2d 257 (2008).

## III. ANALYSIS

At issue is whether the death of a coperpetrator of a crime may be used to score OV 3. In this regard, MCL 777.33 provides in relevant part:

> (1) Offense variable 3 is physical injury to a victim. Score offense variable 3 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

> (a) A victim was killed . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100 points

> \* \* \*

> (2) All of the following apply to scoring offense variable 3:

> \* \* \*

> (b) Score 100 points if death results from the commission of a crime and homicide is not the sentencing offense.

Accordingly, determining whether 100 points were properly assessed for OV 3 implicates three issues: (a) whether a "victim" is required, (b) whether the coperpetrator's death "resulted" from defendant's criminal actions, and (c) whether a coperpetrator can constitute a "victim."

3

## A. REQUIREMENT OF A "VICTIM"

Because OV 3 is defined as "physical injury to a victim," it is manifest that a "victim" is required in all cases in which OV 3 is scored. Although MCL 777.33(2)(b) instructs the court to assess "100 points if death results from the commission of a crime and homicide is not the sentencing offense," that subdivision is part of subsection (2), which provides that "[a]ll of the following [including subdivision (b)] apply to scoring offense variable 3[.]" Therefore, MCL 777.33(2)(b) does not expand the scope of MCL 777.33 to permit OV 3 to be scored absent "physical injury to a victim."

The trial court, however, reasoned to the contrary:

> "[I]t doesn't have to be the victim" who was killed to warrant [assessing 100 points under OV 3] . . . 100 points could be assessed whenever "someone died as a result of the commission of [the] crime," because subsection (2)(b) does not specifically refer to a victim. [*Laidler*, 291 Mich App at 202-203 (third alteration in original).]

This reasoning met with the following response from the Court of Appeals:

> [S]ubsection (2)(b) does not expand the applicability of this offense variable. Instead, it limits the offenses for which 100 points can be assessed. A 100-point score can only be imposed for non-homicide sentencing offenses where the death results from the commission of a crime. Neither of those limiting conditions can enlarge OV 3 so that it would authorize the imposition of points where there is no physical injury to a "victim" as required by subsection (1). [*Id.* at 203.]

We are in agreement with the Court of Appeals that the trial court incorrectly interpreted MCL 777.33(2)(b) to expand the scope of OV 3 beyond "injury to a victim." As we have

4

indicated, we believe that the presence of a victim is a necessary condition to the assessment of points under OV 3.[1]

## B. DEATH "RESULTING" FROM DEFENDANT'S CONDUCT

We also conclude that Holmes's death "resulted" from defendant's criminal actions. When a "victim was killed," MCL 777.33(2)(b) instructs the court to "[s]core 100 points if death *results* from the commission of a crime . . . ." (Emphasis added.) This language contemplates factual causation, a conclusion supported by this Court's decision in *People v Schaefer*, 473 Mich 418, 439 n 67; 703 NW2d 774 (2005) (subsequently reversed on other grounds), in which we explained in the course of our interpretation of a former version of MCL 257.625(4) (operating a motor vehicle while under the influence of liquor and causing death) that "[h]ad the Legislature intended to require only factual causation and not proximate causation as well, the Legislature would have instead used the words '*results* in death' rather than '*causes* the death.'" Because the Legislature in MCL 777.33(2)(b) used the phrase "*results* from the commission of a crime," it is clear that the defendant's criminal actions must constitute a factual cause of a death for purposes of OV 3. "In determining whether a defendant's conduct is a factual cause of the result, one must ask, 'but for' the defendant's conduct, would the result have

---

[1] This is true with regard to OV 3, not only when a victim has been "killed," MCL 777.33(1)(a) and (b), but also with regard to the other covered harms that might befall a victim and justify scoring under this variable, i.e., "[l]ife threatening or permanent incapacitating injury," MCL 777.33(1)(c), or other "[b]odily injury," MCL 777.33(1)(d) and (e). The introductory language of MCL 777.33(1) refers generally to a "victim," as does the specific language in each of its subdivisions (a) through (f), describing the range of covered harms.

occurred?" *Id.* at 435-436 (citations omitted). Specifically, "but for" defendant's commission of a crime, would his coperpetrator's death have occurred?

The answer, in our judgment, is straightforward. But for defendant's commission of a crime, Holmes's death here would *not* have occurred. But for the instant criminal activity that defendant coperpetrated, and but for defendant's specific assistance in enabling his coperpetrator to reach into the window of the home being invaded, there would have been no need for the homeowner to respond to the invasion of his home, as he reasonably did, by exercising force in self-defense, in the defense of others, and in the defense of his property. That is, but for defendant's commission of a crime, his coperpetrator would not have been placed in the position in which he was shot and killed. We thus have no difficulty concluding that defendant's criminal actions constituted a factual cause of Holmes's death and that his death "resulted" from defendant's criminal actions.

The Court of Appeals, in our judgment, incorrectly concluded otherwise in holding that

> the requirement of MCL 777.33(2)(b), that a death result from the commission of a crime, was not satisfied here. Even if Holmes might properly be considered a "victim," his death resulted from the actions of the homeowner, not from the commission of a crime. [*Laidler*, 291 Mich App at 203 n 2.]

However, the obvious fact that Holmes died of a wound caused by a gunshot from the homeowner is of little moment in determining whether his death may also be said to have resulted from defendant's conduct. There is nothing in MCL 777.33 that suggests that there may be only a single cause of a death. Cf. *Robinson v Detroit*, 462 Mich 439, 458-

459; 613 NW2d 307 (2000) (holding that the use in a statute of the article "the" before "proximate cause" "clearly evinces an intent to focus on one cause"). In this case, MCL 777.33(2)(b) merely requires that a victim's death result from the commission of a crime. Thus, even if the homeowner's actions constituted the immediate, or most direct, cause of Holmes's death, defendant's criminal actions are not precluded from constituting *another* cause of death. As we have observed, but for defendant's commission of the instant crime, Holmes would never have been placed in a position of being shot at and killed by the homeowner. Defendant was therefore a factual cause of his coperpetrator's death.[2]

## C. COPERPETRATOR AS A "VICTIM"

We finally conclude that coperpetrator Holmes was a "victim" for purposes of scoring OV 3.[3] MCL 777.33 does not define "victim," and this Court has never

---

[2] Even if proximate cause were required, defendant's actions would *still* satisfy such a requirement. "For a defendant's conduct to be regarded as a proximate cause, the victim's injury must be a 'direct and natural result' of the defendant's actions," and an intervening cause must not sever the causal link. *Schaefer*, 473 Mich at 436-437. "The standard by which to gauge whether an intervening cause supersedes, and thus severs the causal link, is generally one of reasonable foreseeability." *Id.* at 437. Here, Holmes's death was a direct and natural result of defendant's criminal action in seeking to invade a home. Criminal home invasion is a hostile and dangerous undertaking and can reasonably be anticipated to provoke an aggressive response by the homeowner. Such a response may properly include even the exercise of deadly force. See *People v Riddle*, 467 Mich 116, 134; 649 NW2d 30 (2002); CJI2d 7.16 (concerning the duty to retreat to avoid using deadly force).

[3] Our conclusion that Holmes was a "victim" is limited to the scoring of OV 3 under MCL 777.33. Though Holmes may be a victim for these purposes, we do not hold that he is a victim for the purposes of any other statute. Moreover, although he may have been victimized by defendant, he was not victimized by, or the victim of, the homeowner, who, unlike defendant, was not engaged in the commission of any crime when Holmes was shot and killed.

7

addressed the meaning of "victim" for the purposes of OV 3.[4]  When interpreting a

statute, all undefined "words and phrases shall be construed and understood according to

the common and approved usage of the language[.]"  MCL 8.3a.  "To determine the

ordinary meaning of undefined words in the statute, a court may consult a dictionary."

*People v Tennyson*, 487 Mich 730, 738; 790 NW2d 354 (2010), citing *People v Stone*,

463 Mich 558, 563; 621 NW2d 702 (2001).  One representative definition provides that a

"victim" is "a person who suffers from a destructive or injurious action or agency[.]"[5]

*Random House Webster's College Dictionary* (1997).  Because OV 3 is concerned with

criminal punishment, and because MCL 777.33(2)(b) instructs the court to "[s]core 100

points if death results from the commission of a crime," the injurious action must be

criminal and the action must be that of the party whose punishment is at issue, in this

---

[4] Elsewhere in the Code of Criminal Procedure, other OV provisions address "victim." Specifically, OVs 1, 7, and 8 instruct the court to count "each person who was placed in danger of injury or loss of life as a victim."  MCL 777.31(2)(a) (OV 1, aggravated use of a weapon); MCL 777.37(2) (OV 7, aggravated physical abuse); MCL 777.38(2)(a) (OV 8, victim asportation or captivity).  Similarly, OV 9 instructs the court to count "each person who was placed in danger of *physical* injury or loss of life or property as a victim."  MCL 777.39(2)(a) (OV 9, number of victims) (emphasis added).  Contrary to the dissent's contention that we import OV 9's definition of "victim" into OV 3, we only refer to the foregoing provisions in order to underscore that these OVs define "victim," while OV 3 does not.

[5] While the dissent cites a definition of "victim" that requires the suffering to be caused "by another," *post* at 5 (emphasis omitted), it also acknowledges that "dictionaries provide other definitions . . . that could include one who suffers self-inflicted harm," *post* at 4, and indeed cites one such definition, see *post* at 4 n 2.  The dictionary from which that definition was taken includes as an illustrative example, "*a victim of his own scheming*." *The American Heritage Dictionary of the English Language, New College Edition* (1981).  In our judgment, the more general and relevant definition-- cited herein-- does not limit the source of harm and does not preclude self-inflicted harm.

8

case, defendant. Thus, pursuant to common, and relevant, usage, a "victim" is any person who is harmed by the defendant's criminal actions.

This understanding is consistent with the Court of Appeals' opinion in *People v Albers*, 258 Mich App 578, 593; 672 NW2d 336 (2003), which held that for purposes of OV 3, "the term 'victim' includes any person harmed by the criminal actions of the charged party." In *Albers*, the defendant was convicted of involuntary manslaughter after her young son set fire to their apartment, resulting in the death of a child in the building. The defendant was assessed 25 points under OV 3 for "[l]ife threatening or permanent incapacitating injury occurred to a victim," MCL 777.33(1)(c), because another child in the building was seriously injured in the fire. The defendant challenged that score, arguing that OV 3 only applies to the victim of the charged offense-- manslaughter-- and that the surviving child was not a victim specifically of the manslaughter. Rather, defendant argued, the only victim of the manslaughter was the child who died. *Albers* rejected this argument and upheld the scoring of OV 3, stating that the child who was burned in the fire

> clearly was, in a fundamental sense, a victim of the conduct underlying defendant's conviction because he was seriously harmed as a result of the fire. . . .
>
> . . . [I]f the Legislature had intended to limit the application of OV 3 to the victim of the charged offense, it could have expressly included such a provision in the statute. . . . Because we find no authority indicating otherwise, we conclude that, for purposes of OV 3, the term "victim" includes any person harmed by the criminal actions of the charged party. [*Id*. at 592-593.]

9

For the reasons discussed, we adopt the *Albers* definition of "victim." Accordingly, in our judgment, Holmes was unequivocally a person "harmed by the criminal actions" of defendant and therefore constituted a "victim" for purposes of OV 3.[6]

In summary, we believe that to score OV 3 at 100 points, (a) a "victim" is required and (b) the defendant must have been a factual cause of the victim's death. We further believe (c) that a coperpetrator can constitute a "victim."

## IV. APPLICATION

In this case, Holmes was killed while committing a home invasion with defendant. But for defendant's commission of the crime, Holmes would not have been killed. Thus, defendant's conduct was a factual cause of Holmes's death. Because Holmes was killed as a result of the home invasion perpetrated jointly with defendant, he was clearly "harmed by the criminal actions" of defendant. *Albers*, 258 Mich App at 593. Therefore,

---

[6] In this case, the Court of Appeals further determined that for the purposes of OV 3, a "victim" must be an expected victim of the charged offense. *Laidler*, 291 Mich App at 203 (concluding that the "'victim' of the crime here was the homeowner" because the charged offense was home invasion). However, nothing in MCL 777.33, nor in any other relevant definition of "victim" of which we are aware, indicates that "victim" is so limited. Rather, *any person* harmed by the criminal actions of the defendant constitutes a victim. Moreover, if "victim" was so limited, innocent bystanders would be excluded as victims. For example, under the Court of Appeals' interpretation, if one of the homeowner's bullets had missed Holmes and injured an innocent bystander, that injury would not be considered an "injury to a victim," because innocent bystanders are not the *expected* victims of home invasion, either in terms of being occupants of the invaded home or being the perpetrators injured as a result of the reasonably anticipated conduct of a homeowner acting in self-defense.

he was a "victim" for purposes of OV 3. Accordingly, the trial court properly assessed 100 points for this variable.

## V. RESPONSE TO THE DISSENT

In contrast to our definition of "victim," the dissent contends that a "victim" is "any person *other than the offender or a co-offender* who is harmed by the offender's criminal actions." *Post* at 5. The dissent argues that our definition "ignores the important distinction between a 'victim' and an 'offender' that is established by the language of OV 3." *Post* at 3. It concludes that because the language of MCL 777.33 refers to "a victim," "the offender," and "multiple offenders," it is implied that there is a distinction between "victims" and "offenders," such that the two groups are mutually exclusive. Although we respect the dissent's efforts to undertake a close reading of the statute, in our judgment its argument fails for three reasons.

First, that MCL 777.33 employs different terms does not suggest that "offenders" and "victims" are mutually exclusive. Indeed, the terms are never juxtaposed. The closest "offender" and "victim" come to being contrasted is through silent implication in MCL 777.33(2)(a), which provides:

> In multiple offender cases, if 1 offender is assessed points for death or physical injury, all offenders shall be assessed the same number of points.

Notably, this provision omits reference to a "victim." If the dissent were correct, we would expect the Legislature to have provided "points for death or physical injury *of a victim*." Yet it did not. That the Legislature never juxtaposed "victims" and "offenders"

11

in the statute belies the dissent's conclusion that a victim and an offender "cannot be the same person." *Post* at 3.

Although the dissent is correct that we hold it is manifest that a victim is required in all cases in which OV 3 is scored, the dissent is incorrect that it flows from that holding that "offender" and "victim" are juxtaposed-- let alone juxtaposed in such a way that a victim and an offender cannot be the same person. For these reasons, the dissent's contention that our interpretation is inconsistent with *Robinson v City of Lansing*, 486 Mich 1, 16; 782 NW2d 171 (2010), is unavailing. While we do not deny that "a victim is *implied* throughout MCL 777.33," *post* at 4, the dissent takes this implication several steps too far and concludes that the terms "are juxtaposed by implication," such that "victim" cannot include an "offender," *post* at 4. It is one thing to conclude, for the reasons set forth in part III(A) of this opinion, that the presence of a victim is a necessary condition to the scoring of points under OV 3. It is quite another, however, after adopting that conclusion, to read the term "victim" into MCL 777.33(2)(b), to opine that the terms "victim" and "offender" are set apart, to infer from this that the terms are somehow juxtaposed, to also infer that a victim and an offender cannot be the same person, and as a result to adopt a definition of "victim" that excludes offenders and co-offenders.

Second, the dissent contends that "[i]f the Legislature had intended for OV 3 to be scored when an offender or co-offender was killed or injured, it would have chosen to use the word 'person' rather than 'victim.'" *Post* at 4. The dissent asserts that OV 9 does just that by defining "victim" as "each *person* who was placed in danger of physical

injury or loss of life or property . . . ."[7] MCL 777.39(2)(a) (emphasis added). However, the flaw in this argument is that OV 9 defines "victim," while OV 3 does not. Thus, the argument begs the question whether "victim" may include an "offender" for purposes of scoring OV 3. Precisely because OV 3 does not define "victim," we cannot read "person" into, or out of, that definition on the basis of different OV provisions that *do* define "victim."[8]

Third, the dissent argues that our definition of "victim" gives rise to a "paradoxical result," whereby an offender can be scored points for his own injury under OV 3. *Post* at 2. While the dissent is correct regarding this result, we do not think it renders our definition unreasonable or untenable. One purpose of criminal punishment is to hold individuals accountable for the fullest range of social harms they cause, and it is consistent with this purpose to consider *all* physical harms caused by the perpetrator. The state has a generalized interest in minimizing physical harms to all persons, and, all else being equal, the commission of a crime that results in physical harm, even when the harm is to the perpetrator himself, might be deemed more serious than the commission of the same crime that does not result in such harm. Although it would not be unreasonable

---

[7] OVs 1, 7, and 8 also refer to "victims" as "each person." See footnote 4 of this opinion.

[8] The dissent claims that our analysis "imports into OV 3 the definition of 'victim' from OV 9." *Post* at 4. However, the preceding paragraph and footnote 4 of this opinion suggest otherwise. We distinguish OV 3 from OV 9 (as well as from OVs 1, 7, and 8) only because OV 3 does not define "victim," while the other OVs do. Accordingly, the dissent's reference to *People v Monaco*, 474 Mich 48, 58; 710 NW2d 46 (2006), is misplaced.

for the Legislature to exclude harms caused to the perpetrator in the scoring of the offense variables, it is also not unreasonable to hold a perpetrator accountable for those harms.

## VI. CONCLUSION

The issue here concerns whether the death of a coperpetrator of a crime may be scored under OV 3, MCL 777.33, which concerns "physical injury to a victim." We conclude that a coperpetrator is properly considered a "victim" for purposes of OV 3 when he or she is harmed by the criminal actions of the charged party, in this case defendant. Because we conclude that the coperpetrator's death constituted such a harm, we reverse in part the judgment of the Court of Appeals and reinstate defendant's sentence. The trial court properly assessed 100 points for OV 3 because the coperpetrator was harmed by the criminal actions of defendant.

Stephen J. Markman
Robert P. Young, Jr.
Mary Beth Kelly
Brian K. Zahra

14

S T A T E   O F   M I C H I G A N

SUPREME COURT


PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                             Nos. 142442 and 142443

MARTEEZ DONOVAN LAIDLER,

      Defendant-Appellee.

_____

CAVANAGH, J. (*dissenting*).

I dissent from the majority's conclusion that the death of a co-offender permits scoring offense variable (OV) 3, MCL 777.33, for "physical injury to a victim." I would hold that a "victim" is any person other than the offender or a co-offender who is harmed by the offender's criminal actions for purposes of scoring OV 3.

Although I agree with the majority's conclusion that a "victim" is necessary in order to assess points for OV 3, and that a "victim" should not be limited to only the intended victim of the charged offense, I disagree with the majority that a co-offender can be considered a victim. In my view, the majority's interpretation is contrary to the legislative intent in enacting OV 3, particularly when taken to its logical conclusion.[1]

_____

[1] Because in my view a co-offender cannot be a victim for purposes of scoring OV 3, it is unnecessary to determine whether defendant's co-offender was "harmed by the criminal actions of the charged party." Accordingly, I will not address part III(B) of the majority opinion.

The majority concludes that, for purposes of scoring OV 3, "a 'victim' is any person who is harmed by the defendant's criminal actions." *Ante* at 9; see, also, *People v Albers*, 258 Mich App 578, 593; 672 NW2d 336 (2003). Although this simple definition may have initial appeal, problems emerge when it is considered in more detail and in conjunction with the other provisions found in OV 3.

To begin with, MCL 777.33(2)(a) requires that "[i]n multiple offender cases, if 1 offender is assessed points for death or physical injury, all offenders shall be assessed the same number of points." Thus, as the prosecution in this case conceded at oral argument, if defendant's co-offender had survived being shot by the homeowner and was subsequently convicted of home invasion, the co-offender would have had points assessed for OV 3 *for his own injury* because defendant had points assessed for OV 3.

This paradoxical result of the majority's overly broad interpretation of "victim" in OV 3 cannot be limited to multiple-offender cases. Rather, under the majority's analysis, even an offender in a single-offender case must have points assessed under OV 3 for injuries that the offender causes to himself. This is because OV 3 requires that a varying number of points be scored when a "[l]ife threatening or permanent incapacitating injury occurred to a victim," a "[b]odily injury requiring medical treatment occurred to a victim," or a "[b]odily injury not requiring medical treatment occurred to a victim." MCL 777.33(1)(c) through (e). Thus, because the majority defines "victim" to include *any person* harmed by the *criminal actions* of the charged party, a defendant could be assessed points for OV 3 if, for example, the defendant suffered a severe cut on a window that he broke in order to commit a home invasion. Specifically, the defendant would have, at a minimum, suffered a bodily injury and, because the majority determines that a

2

victim includes "*any* person" that is "harmed by the criminal actions of the charged party," the defendant would be the victim of his own criminal action of breaking the window to complete the home invasion.

In my view, this result is inconsistent with the legislative intent as evidenced by the statutory language. Specifically, the majority's broad definition of "victim" ignores the important distinction between a "victim" and an "offender" that is established by the language of OV 3. Throughout OV 3, the statute refers to "a victim" and "the offender" or "multiple offenders." Thus, the statutory language strongly implies a distinction between "the victim" and "the offender"; they cannot be the same person. The majority contends that the Legislature did not intend to distinguish between "a victim" and "the offender" because the two are not directly juxtaposed within the statute and that if my interpretation were correct, the Legislature would have stated in MCL 777.33(2)(a) that points are to be assessed "for death or physical injury *of a victim*," rather than merely "for death or physical injury." However, as Justice MARKMAN wisely explained in *Robinson v City of Lansing*, 486 Mich 1, 16; 782 NW2d 171 (2010), "the Legislature is not required to be overly repetitive in its choice of language." Consistently with that premise, the majority correctly states that "it is manifest that a 'victim' is required in all cases in which OV 3 is scored." *Ante* at 4. Accordingly, the majority correctly concludes that it was unnecessary for the Legislature to refer to "the victim" in MCL 777.33(2)(b) because "a victim" is a "necessary condition to the assessment of points under OV 3." *Ante* at 5. However, the majority fails to realize that this analysis is equally applicable throughout MCL 777.33(2) because the term "the victim" is implied in all the subdivisions of subsection (2), including subdivision (a). Thus, although "the victim"

3

and "the offender" are never *directly* juxtaposed in the express language of the statute, because the need for a victim is *implied* throughout MCL 777.33, "the victim" and "the offender" are juxtaposed by implication.

If the Legislature had intended for OV 3 to be scored when an offender or co-offender was killed or injured, it would have chosen to use the word "person" rather than "victim." For example, OV 9 instructs the court to "[c]ount *each person* who was placed in danger of physical injury or loss of life or property *as a victim*." MCL 777.39(2)(a) (emphasis added). Accordingly, because OV 9 defines "victim" as "each *person*" affected by a defendant's conduct, the definition of "victim" in OV 9 could include a co-offender. OV 3, however, never uses the word "person" in relation to "victim." Rather, as previously discussed, OV 3 carefully distinguishes between the "offender" or "co-offender" and the "victim." The majority's analysis, however, essentially imports into OV 3 the definition of "victim" from OV 9. See *ante* at 9-10. As a result, the majority fails to give the different language used in the two OVs meaning, contrary to the rules of statutory interpretation. See *People v Monaco*, 474 Mich 48, 58; 710 NW2d 46 (2006) ("Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute . . . .") (quotation marks and citation omitted).

Although dictionaries provide other definitions of "victim" that could include one who suffers self-inflicted harm,[2] those definitions are not the most applicable in the context of OV 3, given the distinction OV 3 creates between a "victim" and the

---

[2] See, e.g., *The American Heritage Dictionary of the English Language, New College Edition* (1981) (alternatively defining "victim" as "[a] person who suffers injury, loss, or death as a result of a voluntary undertaking").

"offender." Instead, when "victim" is interpreted in context with the remainder of OV 3, the most applicable, commonly understood definition is "[s]omeone who is put to death or subjected to torture or suffering *by another*," i.e., the offender. *The American Heritage Dictionary of the English Language, New College Edition* (1981) (emphasis added).

Finally, the majority's reliance on the broad policy considerations supporting criminal punishment in order to conclude that its result is "reasonable" is not persuasive. Regardless of whether the majority's result may be subjectively reasonable to some, its result is contrary to the Legislature's intent as communicated by the plain language of OV 3, and thus runs afoul of this Court's primary goal when engaging in statutory interpretation. *Klooster v City of Charlevoix*, 488 Mich 289, 296; 795 NW2d 578 (2011) ("The primary goal of statutory interpretation is to give effect to the Legislature's intent, focusing first on the statute's plain language.") (citation omitted).

Therefore, while I agree with the majority's conclusion that, for purposes of OV 3, "victim" should not be limited to only the intended victim of the charged offense, I would hold that a victim is any person *other than the offender or a co-offender* who is harmed by the offender's criminal actions.

Accordingly, I would affirm the Court of Appeals' result.

Michael F. Cavanagh
Marilyn Kelly
Diane M. Hathaway

5