# Order

**Michigan Supreme Court**
**Lansing, Michigan**

April 1, 2016

Robert P. Young, Jr.,
Chief Justice

Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen,
Justices

152414

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

                                        SC: 152414
                                        COA: 312804

LARRY MANCIEL,
                                        Wayne CC: 12-005217-FH

      Defendant-Appellee.

_____/

      On order of the Court, the application for leave to appeal the August 14, 2015 order of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

      ZAHRA, J. (*dissenting*).

      I respectfully dissent. I believe the overwhelming record evidence supports the prosecution's application for leave to appeal. Despite repeated directions to the contrary, the trial judge, Judge James A. Callahan, continues to rely on orders in unrelated cases to render rulings entirely inconsistent with the record evidence. Judge Callahan apparently fails to appreciate when an order of this Court constitutes binding precedent. I would grant leave.

## I. FACTS OF THE UNDERLYING CASE

Defendant first broached an alibi claim before jury selection by informing Judge Callahan that he "was somewhere else when this incident happened" and that "[t]his is the first dialogue I had with my attorney, so she didn't know about the alibi witnesses I have and the evidence I have." Defendant asked for an opportunity to present his witnesses and evidence so that he could receive a fair trial. Defense counsel, attorney Cena Colbert White, addressed Judge Callahan and stated that "[w]ith respect to the alibi notice that he's indicating to me, I received notice for the first time regarding an alibi at 10:06 this morning." White added that she had spoken to defendant at the jail and during court appearances multiple times. Judge Callahan expressed his belief in counsel's version of the events and the trial proceeded. A jury convicted defendant of unarmed robbery and first-degree home invasion, and he was sentenced as a fourth-offense habitual offender to 15 to 30 years' imprisonment for the home invasion conviction and 5 to 15 years' imprisonment for the unarmed robbery conviction.

Pursuant to an order issued by the Court of Appeals,[1] Judge Callahan held an evidentiary hearing on defendant's claim of ineffective assistance of counsel. White testified that she had visited defendant at the jail on May 16, July 2, July 12, and August 24, 2012, and that defendant was extremely involved in the development of his defense theory, which was misidentification, based on the intruder's wearing a mask. White denied that defendant provided information about potential alibi witnesses before trial. Indeed, she testified that one of defendant's alleged alibi witnesses, Jeanetta Harris, had retained White's services for defendant, but never told White that she was with defendant at the time of the crime. White testified that she first learned of a potential alibi defense on the first day of trial, at which time defendant told her that he was at his father's house when the crime was committed.

White also testified that during her July 2, 2012 visit with defendant, defendant told her that the complainant sold marijuana and that he kicked in the complainant's door to steal the complainant's drug proceeds. White also presented notes taken during that interview, which had been signed by defendant and corroborated her testimony.

Judge Callahan, despite having previously indicated on the record that he believed White's claim that defendant had first broached an alibi defense immediately before trial, and despite clear evidence that defendant had lied when claiming at that time "[t]his is the first dialogue I had with my attorney, so she didn't know about the alibi witnesses I have and the evidence I have," concluded that White should have somehow gleaned the availability of defendant's alibi witnesses. Judge Callahan also concluded that the alibi

---

[1] *People v Manciel*, unpublished order of the Court of Appeals, entered July 3, 2013 (Docket No. 312804).

witnesses would likely have made a difference in the outcome of trial and ruled that defendant was entitled to a new trial.

The prosecution challenged this decision, moved to expand the record, and was eventually provided a second evidentiary hearing.[2] After this hearing, Judge Callahan indicated that he believed that his original decision to grant defendant a new trial was appropriate, but claimed that he was in a quandary regarding the effect of a purported confession by defendant to White. Judge Callahan indicated that he had

> found not only in this case, but in other cases, that once an attorney has been informed by his client . . . that he or she has committed the crime, that the defense attorney is professionally and ethically bound not to call forth alibi witnesses, knowing full well that those alibi witnesses, if the client is to be believed, would be testifying falsely, giving perjurious testimony.

Judge Callahan then stated that he was "in a dilemma in that regard . . . based upon previous rulings of the Court of Appeals and the Supreme Court of this State" that

> recently indicated that the Trial Court erred in finding the testimony of former defense trial counsel credible when during a *Ginther*[3] hearing, he stated that the client had admitted his guilt to him and therefore, he was ethically precluded from calling alibi witnesses during his client's trial. Should a defense lawyer call alibi witnesses if his client has admitted his guilt? Should the client's admission be considered at all in the defense lawyer's decision to call alibi witnesses?

Judge Callahan went on to conclude: "I guess [White] should have called the witnesses. Let the perjury begin."

The prosecution again challenged the ruling, but the Court of Appeals affirmed.[4] This Court, however, vacated the judgment of the Court of Appeals and remanded to the Court of Appeals, instructing it to remand the case to Judge Callahan for clarification of whether his ruling that defendant was entitled to a new trial was based on his determination that the defense witnesses were credible or whether he granted a new trial solely because he felt constrained to do so by this Court's orders in *unrelated* cases.[5]

---

[2] See *People v Manciel*, unpublished order of the Court of Appeals, issued May 29, 2014 (Docket No. 312804).

[3] *People v Ginther*, 390 Mich 436 (1973).

[4] *People v Manciel*, unpublished opinion per curiam of the Court of Appeals, issued December 30, 2014 (Docket No. 312804).

[5] *People v Manciel*, 497 Mich 1034 (2015).

On remand, Judge Callahan again referred to this Court's orders in unrelated cases. Judge Callahan again noted that White believed that defendant had admitted his culpability but explained that clients are not always honest when admitting to engaging in certain acts. Judge Callahan again claimed that he was

> in a dilemma in that regard, and therefore, based upon previous rulings of the Court of Appeals and the Supreme Court of this State, and based upon purported alibi witnesses being brought to the attention of defense counsel had made a decision that those alibi witnesses, because of the defendant admitting to the crime or giving a declaration against interest which could be construed as the same, had professionally chosen not to call those alibi witnesses because it would be a breach of professional ethics, for the defendant could not be in two places simultaneously.

> The Supreme Court and Court of Appeals have recently indicated that the Trial Court erred in finding the testimony of former defense trial counsel credible when during a *Ginther* hearing, he stated that the client had admitted his guilt to him and therefore, he was ethically precluded from calling alibi witnesses during his client's trial. Should a defense lawyer call alibi witnesses if his client has admitted his guilt? Should the client's admission be considered at all in the defense lawyer's decision to call alibi witnesses?

The prosecution sought to vacate Judge Callahan's order, but the Court of Appeals affirmed, entering an order noting that Judge Callahan had granted a new trial on the basis of the credibility of the witnesses.[6] Despite our clear caution not to rely on unrelated cases, Judge Callahan continued to improperly rely on orders in the unrelated cases to render a determination in the instant case that appears to be against the great weight of the evidence.

## II. THE UNRELATED CASES

The unrelated cases that Judge Callahan repeatedly referred to are *People v Hunter*[7] and *People v Terrell*,[8] in which he had been reversed by this Court because we concluded "[t]he trial court clearly erred in finding that the defendant's trial attorney was

---

[6] *People v Manciel*, unpublished order of the Court of Appeals, entered August 14, 2015 (Docket No. 312804).

[7] *People v Hunter*, 493 Mich 1015 (2013).

[8] *People v Terrell*, 495 Mich 869 (2013).

credible." Needless to say, *Hunter* and *Terrell* are not binding precedent to the instant case or, more importantly, to future cases. Significantly, *Hunter* and *Terrell*, unlike the instant case, involved attorney Marvin Barnett, whose unprofessional and alleged criminal conduct recently resulted in his three-year suspension from the Attorney Discipline Board.

*Hunter* and *Terrell* are cases unrelated to each other. In each, the defendant was represented by Barnett. Each defendant was convicted of committing violent felonies. Each defendant moved for a new trial, claiming that he was denied the effective assistance of counsel. At each defendant's *Ginther* hearing, Barnett testified, without corroboration of any kind, that the defendant had confessed to him that he had committed the crime. Barnett claimed in each *Ginther* hearing that the confession ethically precluded him from presenting evidence inconsistent with the confession. Judge Callahan found Barnett's testimony credible. After thorough review of the lower court records in each case, this Court disagreed with Judge Callahan's credibility determinations with regard to Barnett. This Court remanded each case to the Court of Appeals for reconsideration of the defendants' ineffective-assistance claims without relying on Judge Callahan's credibility determination.

## III. ANALYSIS

In *DeFrain v State Farm Mut Auto Ins Co*, this Court explained "[a]n order of this Court is binding precedent if it constitutes a final disposition of an application and contains a concise statement of the applicable facts and reasons for the decision."[9] "These requirements derive from article 6, § 6, of our 1963 Constitution . . . ."[10] The *Hunter* and *Terrell* orders contain no facts and no reasons for the decisions and, therefore, cannot be considered binding in cases other than *Hunter* and *Terrell*. Yet Judge Callahan extrapolated from these nonprecedential orders that he had previously committed error by concluding that

> once an attorney has been informed by his client, whether encouraged or spontaneously obtained from the client without elicitation, that he or she has committed the crime, that the defense attorney is professionally and ethically bound not to call forth alibi witnesses, knowing full well that those alibi witnesses, if the client is to be believed, would be testifying falsely, giving perjurious testimony.

---

[9] *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 351, 369 (2012), citing, *People v Crall*, 444 Mich 463, 464 n 8 (1993), and *Dykes v William Beaumont Hosp*, 246 Mich App 471, 483 (2001).

[10] *DeFrain*, 491 Mich at 369.

The Court's orders in *Hunter* and *Terrell* made no such assertion. Nothing in the *Hunter* and *Terrell* orders raised any question in regard to an attorney's ethical obligation to call alibi witnesses if a defendant had admitted his guilt. Again, the orders only relate to the trial court's finding that now-suspended attorney Marvin Barnett's nearly identical uncorroborated testimony offered in the *Ginther* hearings in *Hunter* and *Terrell* was credible.

By relying on the unrelated orders and improperly extrapolating a rule from those cases, Judge Callahan failed to appreciate the significance of testimony from an officer of the court, White, whose testimony was far different from the testimony of Barnett in those unrelated cases. During the *Ginther* hearing in this case, White testified in great detail that defendant had admitted to her that he committed the offense. Her testimony was confirmed by notes taken during the interview, which defendant admittedly signed, though later claiming he was delusional. The evidence was also clear that defendant, a fourth-offense habitual offender, had lied when claiming that he had not met with White before trial. Significantly, Judge Callahan had acknowledged defendant's clear lack of credibility when denying his day-of-trial request to present alibi witnesses. Despite all indications to the contrary, Judge Callahan continued to improperly rely on this Court's orders in unrelated cases in which now-suspended attorney Marvin Barnett had acted as counsel.

*Ginther* hearings are fact intensive and must be evaluated on a case-by-case basis. Thus, it is difficult to understand why Judge Callahan believes he is constrained in this case by the orders in *Hunter* and *Terrell*. And while I acknowledge that factual findings made by a trial court are rarely disturbed on appeal, this Court's orders in *Hunter* and *Terrell* were entirely justified. This point is made evident by the Michigan Attorney Discipline Board's notice of suspension, which documents that Barnett had committed a litany of misconduct in the practice of law.[11] Particularly relevant to our orders was that

---

[11] The notice provides:

> The hearing panel found that [Barnett] neglected a legal matter, in violation of MRPC 1.1(c); failed to seek the lawful objectives of his client through reasonably available means permitted by law, in violation of MRPC 1.2(a); failed to act with reasonable diligence in violation of MRPC 1.3; failed to communicate with his client in violation of MRPC 1.4(a) and (b); failed to keep client funds separate from his business funds, in violation MRPC 1.15(c); failed to deposit client funds into an IOLTA account, in violation of MRPC 1.15(g); requested a person other than his client to refrain from voluntarily giving relevant information to another party, in violation of MRPC 3.4(f); used means that have no substantial purpose other than to embarrass, delay, or burden a third person, or used methods of obtaining evidence that violated the legal rights of such a person, in violation of MRPC 4.4; and failed to treat with courtesy and respect all persons

Barnett was found to have "engaged in conduct which involved dishonesty, fraud, deceit, misrepresentation, or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, contrary to MRPC 8.4(b)[.]"[12]  The hearing panel also found that Barnett had "engaged in conduct that is contrary to justice, ethics, honesty or good morals, in violation of MCR 9.104(3)" and "engaged in conduct . . . that violates a criminal law of a state and the United States, to wit, MCL 750.122(3) and (6), in violation of MCR 9.104(5)," which generally relate to threats and intimidation of witnesses.[13]

---

involved in the legal process, in violation of MRPC 6.5(a).  The panel also found that respondent failed to provide information demanded by the Grievance Administrator, in violation of MRPC 8.1(a)(2); engaged in conduct which violated the Rules of Professional Conduct, contrary to MRPC 8.4(a); engaged in conduct which involved dishonesty, fraud, deceit, misrepresentation, or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer, contrary to MRPC 8.4(b); engaged in conduct prejudicial to the administration of justice, in violation of MCR 9.104(1); exposed the legal profession or the courts to obloquy, contempt, censure or reproach, in violation of MCR 9.104(2); engaged in conduct that is contrary to justice, ethics, honesty or good morals, in violation of MCR 9.104(3); violated the standards or rules of professional responsibility adopted by the Supreme Court, contrary to MCR 9.104(4); engaged in conduct in [sic] that violates a criminal law of a state and the United States, to wit, MCL 750.122(3) and (6), in violation of MCR 9.104(5); made knowing misrepresentations of facts or circumstances in his answer to the request for investigation, in violation of MCR 9.104(6); and made misrepresentations in his answer to the request for investigation, in violation of MCR 9.113(A).  [Attorney Discipline Board, Notice of Suspension and Restitution for Marvin Barnett, issued October 28, 2015 (Case Nos. 14-8-GA, 14-26-GA, and 14-53-GA), p 1, available at <http://www.adbmich.org/coveo/notices/2015-10-08-14n-8.pdf#search=%22Barnett%22>  (accessed  March  30,  2016) [https://perma.cc/9ARW-Q2HX].]

[12] *Id.*

[13] *Id.*

Given Judge Callahan's continued improper reliance on our nonprecedential and unrelated orders and his failure to appreciate the individual merit of the instant case, I would grant the prosecution's application.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 1, 2016



Clerk

p0329