*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHNATHAN LAMAR BURKS,

        Defendant-Appellant.

UNPUBLISHED
May 19, 2026
11:11 AM

No. 369129
Wayne Circuit Court
LC No. 16-002935-03-FC

Before: FEENEY, P.J., and GARRETT and BAZZI, JJ.

PER CURIAM.

Defendant is once again before this Court on remand from our Supreme Court for consideration as on leave granted.[1] Defendant previously appealed as of right his convictions for (1) first-degree home invasion, MCL 750.110a(2); and (2) possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, to which he was sentenced, as a third-offense habitual offender, MCL 769.11, to consecutive prison terms of (1) 18 to 40 years, and (2) 2 years, respectively.[2] See *People v Burks*, unpublished per curiam opinion of the Court of Appeals, issued April 3, 2018 (Docket No. 335955) (*Burks I*). As will be discussed in greater detail, this Court affirmed defendant's convictions and sentences. See *People v Burks*, unpublished per curiam opinion of the Court of Appeals, issued February 27, 2020 (Docket No. 335955) (*Burks III*), p 1, 3; *Burks I*, unpub op at 1. Defendant now appeals the trial court's denial of his motion for relief from judgment under MCR 6.508(D)(2) and (3). We affirm.

## I. FACTS

"Defendant was convicted for his role in aiding and abetting his two co-defendants in a shooting that was precipitated by a dispute over tennis shoes." *Burks III*, unpub op at 1. "One of

---

[1] *People v Burks*, 21 NW3d 462 (Mich, 2025) (*Burks VII*).

[2] The jury acquitted defendant of first-degree premeditated murder, MCL 750.316(1)(a), first-degree felony murder, MCL 750.316(1)(b), two counts of assault with intent to commit murder, MCL 750.83, and discharge of a firearm at a dwelling causing death, MCL 750.234b(5).

defendant's accomplices burst into a home and shot three people. A three-year-old child died as a result of the shooting, and two adults were injured." *Id*. Leading up to the home invasion, defendant called one of his codefendants, Paul Kendall, Jr., who was described as a "violent person," and informed him of the dispute. When Kendall arrived, he stated, "I'm not going over there for no games, and if you don't have a gun, you don't need to go." Defendant and another codefendant joined Kendall; Kendall entered the home and shot the victims; and a few minutes later, a vehicle drove by and fired at the home.

Defendant was convicted and sentenced, as stated earlier. At the sentencing hearing, the prosecution requested that the trial court assign 100 points for offense variable (OV) 3. Defendant objected, arguing that "the homicide was submitted to the jury, and the jury found him not guilty . . . ." The trial court denied the objection and assigned 100 points for OV 3 without further explanation. When sentencing defendant above his recommended minimum sentencing range for his first-degree home invasion conviction,[3] the trial court explained as follows:

> In this particular case you mobilized an angry, volatile young person that you knew to be angry and volatile, and who had a penchant for using guns to come over and rally with you because of someone's missing tennis shoes.

> A three-year old child has no future. There is a heartache for that family because it was your idea. You were the one who instigated the phone call and all of the action that led to a three-year old child being murdered on Easter Sunday.

> I know that your position has been that you didn't do anything, that you were just there watching.

> Well, the jury didn't believe that, and I don't believe that. Nobody brings spectators to a murder. You were involved. You were there in the car with the shooter driving there, and you were there with the shooter driving away, and you were prepared to be the wheel man to drive away.

> And but for your active involvement, that three-year old child would be alive today. You bear enormous responsibility.

## II. PROCEDURAL HISTORY

In *Burks I*, unpub op at 1, this Court affirmed defendant's convictions and sentences. In doing so, this Court held that defendant's sentence was not based on acquitted conduct, determining "there was evidence that defendant's actions set in motion the events leading to the shooting death and injuries." *Id*. at 4. This Court explained as follows:

> As noted by the trial court, defendant's behavior in being a part of the group that produced the death and injuries in retaliation for what defendant thought had been

---

[3] Defendant's recommended minimum sentencing range was 57 to 142 months, and the trial court sentenced defendant to 18 to 40 years' imprisonment.

an assault on his brother was not adequately accounted for in the sentencing guidelines. Contacting a violent person, knowing that he is violent and utilizes firearms, immediately after learning of his brother's situation, along with participating in the retaliation, defendant properly shares the blame for the carnage, at least for purposes of a sentencing departure. The trial court's view that defendant's phone call to the gunman over stolen shoes was the catalyst for the crimes, in contrast to defendant's view that he was merely a spectator, was supported by the evidence. [*Id*. at 4-5.]

In *People v Burks*, 505 Mich 873 (2019) (*Burks II*), our Supreme Court vacated the portion of the judgment affirming defendant's sentence for home invasion and remanded for reconsideration in light of *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019).

On remand, this Court again affirmed defendant's sentence, determining that the trial court did not sentence defendant as if he had aided and abetted in the child's murder. *Burks III*, unpub op at 1, 3. This Court reasoned as follows:

Although [the] trial court commented on the death that resulted from the shooting, the trial court did not equate defendant's conduct with the murder and sentence him accordingly for an acquitted murder. Rather, the trial court cited to defendant's role in the killing as a catalyst for the circumstances that were placed into motion and the individuals prone to violence that defendant brought into the fray over tennis shoes. We conclude that [the] sentencing court's rationale for imposing its sentence did not violate *Beck* and adhere to our prior rejection of defendant's contention that the sentence was improperly premised on acquitted conduct[.] [*Id*. at 3.]

Notably, this Court declined to address the scoring of OV 3, reasoning that the issue was not within the scope of the Supreme Court's remand order. *Id*. at 4. In *People v Burks*, 505 Mich 1083 (2020) (*Burks IV*), our Supreme Court denied leave to appeal, stating that it was "not persuaded that the question presented should be reviewed by this Court."

Thereafter, defendant moved *in propria persona* for relief from judgment in the trial court, under MCR 6.508(D)(2) and (3), asserting that the trial court's consideration of acquitted conduct when assigning 100 points for OV 3 violated defendant's due-process rights under *Beck*. The trial court denied relief from judgment, determining that defendant was not sentenced as if he aided and abetted in the child's death; instead, he was sentenced because of his role "as a catalyst" for her death. Thereafter, defendant filed a delayed application for leave to appeal, again raising the alleged use of acquitted conduct to score OV 3, which this Court denied. *People v Burks*, unpublished order of the Court of Appeals, entered April 29, 2024 (Docket No. 369129) (*Burks V*). In lieu of granting leave to appeal, our Supreme Court remanded this matter to this Court for consideration as on leave granted. *People v Burks*, 21 NW3d 462 (Mich, 2025) (*Burks VI*).

# III. PRE-OFFENSE CATALYST OR TRANSACTIONAL CONDUCT VERSUS ACQUITTED CONDUCT

On appeal, defendant argues that he is entitled to resentencing because the trial court erroneously relied on acquitted conduct when assigning 100 points for OV 3. We disagree.

## A. STANDARD OF REVIEW

"A trial court's decision on a motion for relief from judgment is reviewed for an abuse of discretion." *People v Christian*, 510 Mich 52, 74; 987 NW2d 29 (2022). An abuse of discretion occurs when the court makes a decision that falls outside the range of reasonable and principled outcomes or makes an error of law. *Id*. at 75. Constitutional issues are reviewed de novo. *People v Brown*, 339 Mich App 411, 419; 984 NW2d 486 (2021). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015) (quotation marks and citation omitted). When making these factual findings, the trial court may consider all record evidence. *Id*. "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

## B. ANALYSIS

OV 3 concerns "physical injury to a victim." MCL 777.33(1). An assessment of 100 points is required "if death results from the commission of a crime and homicide is not the sentencing offense." MCL 777.33(2)(b). The assessment of 100 points for OV 3 requires factual causation, i.e., that the victim's death would not have occurred but for the defendant's criminal actions. *People v Laidler*, 491 Mich 339, 345; 817 NW2d 517 (2012). The defendant's conduct is not required to have been the exclusive cause of the death. *Id*. at 346. The assessment of points for OV 3 is to be based on a consideration of the sentencing offense alone. *People v Biddles*, 316 Mich App 148, 165; 896 NW2d 461 (2016).

In *Beck*, 504 Mich at 629, our Supreme Court held that "due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." Stated differently, "[o]nce acquitted of a given crime, it violates due process to sentence the defendant as if he committed that very same crime." *Id*. at 609. Accordingly, "a sentencing court may not rely even in part on acquitted conduct when imposing a sentence for the defendant's conviction." *People v Stokes*, 333 Mich App 304, 310; 963 NW2d 643 (2020). But sentencing courts may consider "the entire res gestae of an acquitted offense" as well as "the time, place, and manner in which an offense of which a defendant has been convicted is committed." *Id*. at 310-311. "In the absence of evidence presented by a defendant demonstrating that a sentencing court actually relied on acquitted conduct when sentencing the defendant, the defendant is not entitled to resentencing." *Id*. at 312.

In *People v Brown*, 339 Mich App 411, 422; 984 NW2d 486 (2021), this Court discussed "the epistemological and practical problems associated with" determining what constitutes

"acquitted conduct" that a sentencing court is barred from considering under *Beck*. This Court noted that one option "would be to adopt a categorical approach based on the elements of the crime. Under this standard, *any evidence* that relates to *any element* of the crime of which the defendant was acquitted would have to be discarded at sentencing." *Id*. This Court rejected that approach because although it would be easy to apply, it would lead to absurd results in some situations. *Id*. at 423. For example, "[i]f the categorical approach were to be adopted, then this would mean that any fact or circumstance related to any element of the acquitted crime would be off-limits at sentencing, even if the same fact or circumstance was also related to the convicted crime." *Id*.

This Court then explained that "[a] different way of identifying the facts and circumstances that are prohibited at sentencing centers on what the parties actually disputed at trial." *Id*. This approach would not prohibit consideration of "any and all facts and circumstances related to any element of the crime" of which the defendant was acquitted of, but would "instead focus[] on the key facts and circumstances that the parties argued about during the trial." *Id*.

> This approach is similar to the "rational jury" standard used in the double-jeopardy context, which requires examining the record to determine the ground or grounds upon which a rational jury could have acquitted the defendant. Rather than focus on all of the conceivable grounds upon which a jury could have theoretically acquitted the defendant—even those grounds, for example, that were conceded by the defense or otherwise uncontested by the parties—the focus would be on the grounds that the parties actually put in dispute at trial. The inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings. [*Id*. at 423-424 (quotation marks and citations omitted).]

This Court concluded that "[t]his rational-jury approach appears to be consistent with *Beck*." *Id*. at 424. Accordingly, this Court specifically "look[s] at the conduct actually disputed at trial to determine the basis of the jury's acquittal and whether the evidence the trial court considered at sentencing was consistent with that acquittal." *People v Boukhatmi*, ___ Mich App ___, ___; ___NW3d ___ (2024) (Docket No. 363998); slip op at 6.

Applying these principles to the present case, we conclude that defendant has failed to demonstrate that the trial court relied on "acquitted conduct," opposed to the sentencing offense alone, when assigning 100 points for OV 3. Therefore, as we will explain, the trial court did not err in assigning 100 points for OV 3.

The sentencing offense for which 100 points were assigned for OV 3 was first-degree home-invasion. Specifically, the jury found defendant guilty of aiding and abetting in a home-invasion that resulted in a child's death. That is, but for defendant's criminal acts of aiding and abetting in the home-invasion, the child would not have died. Defendant was therefore "a factual cause" of the child's death, even if he was not the sole factual cause. See *Laidler*, 491 Mich at 346.

Defendant argues that because the jury acquitted him of felony murder, the jury determined that defendant was not the but-for cause or otherwise responsible for the child's death. But the trial court did not indicate that defendant engaged in acquitted conduct. As this Court previously

held in *Burks III*, unpub up at 3, although the trial court commented on the child's death, it "did not equate defendant's contact with the murder and sentence him accordingly for an acquitted murder." "Rather, the trial court cited to defendant's role in the killing as a *catalyst for the circumstances that were placed into motion* and the individuals prone to violence that defendant brought into the fray over tennis shoes." *Id*. (emphasis added).

Indeed, here, the trial court focused on defendant's *pre-offense* conduct as the "catalyst" for the three-year-old child's death; it concluded that but for defendant's decision to "mobilize[] an angry, volatile young person that [he] knew to be angry and volatile, and who had a penchant for using guns to come over and rally with [him] because of someone's missing tennis shoes," the three-year-old child would still be alive. The fact that defendant was not convicted of first-degree murder, assault with intent to murder, and discharge of a firearm at or in a building causing death, is irrelevant here because the trial court focused on defendant's role as a catalyst in bringing the "volatile" posse together; defendant even acknowledges on appeal that "[y]es, [defendant] made a phone call and was present at the scene . . . ." In *People v Barr*, unpublished per curiam opinion of the Court of Appeals, issued March 23, 2023 (Docket No. 353585), pp 34-35,[4] a panel of this Court determined that the trial court did not err when assessing 100 points for OV 3 when the victim of an armed robbery died as a result of a conspiracy to commit armed robbery against him. The defendant was convicted of that conspiracy as well as armed robbery and felony-firearm, but he was acquitted of first-degree felony murder and several other charges. *Id*. at 1-2. The panel reasoned as follows:

> [B]y finding defendant guilty of conspiracy to commit an armed robbery against [the victim], the jury found beyond a reasonable doubt that, *inter alia*, (1) defendant and at least one other person agreed to commit an armed robbery against [the victim], and (2) defendant specifically intended to accomplish the illegal objective, i.e., to commit or help to commit an armed robbery of [the victim] . . . . That is, but for defendant's criminal acts of entering into a conspiracy to commit an armed robbery of [the victim], [the victim] would not have died. Defendant was thus "a factual cause" of the death, even if he was not the sole factual cause. [*Id*. at 34.]

Here, we agree that but for defendant inviting a weaponized Kendal to participate in Beck's scheme to recover the missing tennis shoes, the three-year-old child would still be alive. We conclude that the assessment of 100 points for OV 3 is appropriate when "death results from the commission of a crime and homicide is not the sentencing offense," MCL 777.33(2)(b), and the victim's death would not have occurred but for the defendant's conduct leading to the home invasion. See *People v McGraw*, 484 Mich 120, 129; 771 NW2d 655 (2009) (regarding OV 9, "[n]othing precludes the sentencing court from considering transactional conduct when deciding what sentence to impose" within the guidelines' range); Cf. *Laidler*, 491 Mich at 345-346.

---

[4] "Although unpublished opinions are not binding, we may consider the rationale contained in an unpublished opinion to be persuasive." *People v Brown*, ___ Mich App ___, ___; ___NW3d ___ (2024) (Docket No. 359376); slip op at 9 n 14.

## IV. CONCLUSION

Because sentencing courts may consider "the entire res gestae of an acquitted offense" as well as "the time, place, and manner in which an offense of which a defendant has been convicted is committed," *Stokes*, 333 Mich App at 310-311, the trial court did not err by considering defendant's pre-offense role under these circumstances. Accordingly, the trial court did not err in assigning 100 points for OV 3, and the trial court did not abuse its discretion by denying defendant relief from judgment.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Mariam S. Bazzi