# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CLIFFORD LUCAS BIDDLES,

        Defendant-Appellant.

FOR PUBLICATION
June 30, 2016
9:00 a.m.

No. 326140
Wayne Circuit Court
LC No. 14-005402-FC

Before: MURPHY, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

MURPHY, P.J.

Defendant was convicted by a jury of felon in possession of a firearm, MCL 750.224f, and he was sentenced as a fourth-offense habitual offender, MCL 769.12, to 76 to 156 months' imprisonment. Defendant appeals as of right, challenging his conviction and sentence. We affirm defendant's conviction, vacate his sentence, and remand for resentencing.

## I. FACTUAL BACKGROUND

Defendant and his cousin, codefendant Charles Johnson, were both charged with second-degree murder, MCL 750.317, assault with intent to commit murder, MCL 750.83, possession of a firearm during the commission of a felony, MCL 750.227b, and felon-in-possession in connection with the shooting death of Timothy Kirby and the assault of Kirby's nephew, Christopher Johnson, which occurred outside the victims' apartment complex. The prosecution presented evidence that the victims were inside the apartment, and defendant and codefendant Johnson were among a group "partying" outside, when Kirby heard someone say that he had been stabbed. When Christopher Johnson and Kirby went outside to investigate, they encountered defendant, and Kirby inquired about what was occurring. According to Christopher Johnson, defendant responded by asking if the victims "got a beef" and signaling to codefendant Johnson, who then approached the men, brandished a handgun, and shot toward the victims as they fled. Codefendant Johnson, testifying on defendant's behalf,[1] admitted that he had quickly approached the victims after they said something to defendant, pulled his handgun, and fired

---

[1] Defendant and codefendant Johnson were tried together. Midway through trial, Johnson pleaded guilty to all of the charges brought against him and then testified for defendant.

-1-

three or four shots, killing Kirby. Codefendant Johnson denied that defendant had motioned or signaled to him and described defendant as being in shock when Johnson fired his gun. The jury convicted defendant of felon-in-possession, as there was evidence that he was observed holding a gun after the shooting by codefendant Johnson had concluded, but acquitted him of the additional charges.

## II. TRIAL COURT'S CONDUCT

Defendant argues that he is entitled to a new trial because the trial judge's comments to defense counsel during his cross-examination of the officer in charge deprived him of a fair trial. We disagree.

"The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). A defendant must overcome a heavy presumption of judicial impartiality when claiming judicial bias. *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011). In determining whether the trial judge's conduct deprived defendant of a fair trial, we consider whether the trial judge's "conduct pierce[d] the veil of judicial impartiality." *Stevens*, 498 Mich at 164, 170. "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id.* at 171. This is a fact-specific inquiry, and we must consider the "cumulative effect" of any errors. *Id.* at 171-172. A single instance of misconduct generally does not create an appearance that the trial judge is biased, unless the instance is "so egregious that it pierces the veil of impartiality." *Id.* at 171. In evaluating the totality of the circumstances, we consider a variety of factors, including

> the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. [*Id.* at 172.]

Initially, defendant points to the trial judge's remark that defense counsel might "get a spanking." After the trial judge had sustained one of the prosecutor's objections to defense counsel's questions, defense counsel asked, "May we approach on something before I get to this area just in case you—." At that point, the trial judge interjected, "Just before you get a spanking." Although this comment would have been better left unsaid, the judge seemed to be acknowledging defense counsel's reason for approaching the bench. During the preceding line of questioning, the trial judge sustained the prosecutor's objections and had intervened on at least nine occasions, attempting to explain to defense counsel why his questions were improper and needed to be rephrased. Although the judge made the challenged statement in a jesting manner, the clear intent of the comment was that defense counsel could approach the bench in an attempt to avoid being interrupted and corrected yet again. Considering the trial judge's comment in context, we cannot conclude that the isolated and flippant statement influenced the jury.

Defendant next directs our attention to additional exchanges between defense counsel and the trial judge that he alleges demonstrated bias. For instance, defendant claims that the judge

thwarted counsel's attempts to ask the officer if he had made "a deal" with a witness, if defendant was charged in this case because he was untruthful, and when the arrest warrant was issued. It is well established that the trial court has a duty to control trial proceedings in the courtroom, and has wide discretion and power in fulfilling that duty. *People v Conley*, 270 Mich App 301, 307; 715 NW2d 377 (2006). Although a defendant has the right to cross-examine his accusers as secured by the Confrontation Clause, US Const, Am VI, a court has wide latitude to impose reasonable limits on cross-examination based on relevancy or concerns regarding such matters as harassment, prejudice, confusion of issues, and repetitiveness. *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). A court must "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." MRE 611(a).

The trial judge's remarks were not of such a nature as to unduly influence the jury. The record shows that the trial judge appropriately exercised her duty to control the trial and prevent excessive and improper questioning of the officer. The judge aptly noted that a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. See MRE 602. In addition, the trial judge interrupted various questions by defense counsel that called for speculation and were repetitive and argumentative. Defendant has provided no explanation, argument, or authority indicating how any of the evidentiary objections were improper and not in accordance with MRE 611(a). Rather, defendant focuses on the trial judge's interruptions and apparent growing frustration with defense counsel, but fails to also observe defense counsel's behavior of talking back to the judge and ignoring the judge's directives to move on and rephrase questions, which necessitated many of the judge's repeated interruptions.

Next, defendant complains about the trial judge's comments in the following passage, as defense counsel questioned the officer:

> *Q*. Did you testify in this case?
>
> *A*. Yes.
>
> *Q. And you sat there in the witness chair?*
>
> *A. Yes.*
>
> *Q. As a witness.*
>
> *A. Yes.*
>
> *The court.* [Counsel]*, why do you drag things out?*
>
> *Defense counsel.* It's my approach. *Can I just be me?*
>
> *The court.* No, because it is getting to be argumentative and you know
>      that the rules of evidence don't allow arguments.

*Defense counsel. I'm not being argumentative.* [Emphasis added.]

Defendant fails to acknowledge defense counsel's unnecessary and inane questions of the officer and counsel's improper and disrespectful response to the judge's ruling and statements in the above colloquy. In sum, considering the totality of the circumstances, the trial judge's "interruptions" and remarks were reasonably measured given defense counsel's questions and were focused on enforcing the rules of evidence. They were not calculated to pierce the veil of judicial impartiality and were unlikely to unduly influence the jury to defendant's detriment. In addition, it does not appear from the record that the trial judge interjected more frequently during the defense's improper questioning of the witnesses than during the prosecution's examinations. Finally, the trial judge explained to the jury that she had a responsibility to ensure that the trial was run efficiently and fairly. At the beginning of trial and at the close of the proofs, the judge instructed the jury that the case must be decided solely on the basis of the evidence, that the judge's comments and rulings were not evidence, that the judge was not trying to influence the vote or express a personal opinion about the case when making a comment or ruling, and that if the jury believed that the judge had an opinion, that opinion had to be disregarded. These instructions weigh against a conclusion that the trial judge pierced the veil of judicial impartiality and deprived defendant of a fair trial. *Stevens*, 498 Mich at 190. We also cannot help but note that defendant was acquitted by the jury of murder, assault, and felony-firearm charges, seriously calling into question defendant's claim that judicial bias improperly influenced the jurors to his detriment. Defendant has not demonstrated that the trial judge's conduct deprived him of a fair trial.

## III. SENTENCING

Defendant poses, broadly speaking, a two-prong attack against the sentence imposed by the trial court. First, defendant presents a challenge regarding the adequacy of the evidence supporting the court's scoring of the offense variables (OVs) relative to OV 1, MCL 777.31, OV 3, MCL 777.33, OV 4, MCL 777.34, and OV 9, MCL 777.39. We shall refer to this argument as defendant's "evidentiary challenge." Second, defendant presents a constitutional argument under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), challenging the scoring of the four OVs, contending that the trial court engaged in impermissible judicial fact-finding in regard to the OVs. We shall refer to this argument as defendant's "constitutional challenge."

Each of defendant's challenges has its own distinct remedy. With respect to the evidentiary challenge, if the trial court clearly erred in finding that a preponderance of the evidence supported one or more of the OVs or otherwise erred in applying the facts to the OVs, *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), and if the scoring error resulted in an alteration of the minimum sentence range, he would be entitled to resentencing, *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006). On the other hand, a *Crosby* remand[2] under *Lockridge* is not the same remedy as remanding a case for resentencing. In *Lockridge*, 498 Mich at 398, our Supreme Court set forth the parameters of a *Crosby* remand, stating:

---

[2] This is a reference to *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

[O]n a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law, if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the "circumstances existing at the time of the original sentence." [Citations omitted.]

Accordingly, a *Crosby* remand results in *the possibility* of resentencing, whereas, in the context of a successful evidentiary challenge, resentencing is actually ordered by the appellate court. Of course, post-*Lockridge,* any resentencing will have to be conducted pursuant to the principles enunciated in *Lockridge*, primarily the directive that the guidelines are now advisory only. *Lockridge*, 498 Mich at 365. When this Court is presented with an evidentiary *and* a constitutional challenge regarding the scoring of the guidelines, the evidentiary challenge must initially be entertained, because if it has merit and requires resentencing, the constitutional or *Lockridge* challenge becomes moot, as a defendant will receive the protections of *Lockridge* on resentencing. And if an evidentiary challenge does not succeed, then and only then should we entertain the constitutional challenge. Therefore, we disagree with any assertion that defendant's evidentiary challenge need not be reached because his constitutional challenge under *Lockridge* is worthy of a *Crosby* remand.[3]

The fact that a trial court engaged in judicial fact-finding is not relevant to the inquiry with respect to an evidentiary challenge.[4] The constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself, it was judicial fact-finding in conjunction with *required* application of those found facts for purposes of increasing a *mandatory* minimum sentence range, which constitutional violation was remedied in *Lockridge* by making the

---

[3] In *People v Sours*, __ Mich App __; __ NW2d __ (2016), this Court recently addressed an evidentiary challenge regarding OV 19, MCL 777.49 (administration of justice), as well as a constitutional challenge under *Lockridge* concerning OV 19. The *Sours* panel first analyzed the evidentiary challenge, concluding that the assessment of ten points for OV 19 was improper, that it should have been assessed zero points, that the scoring error altered the minimum sentence range, and that, accordingly, the defendant was entitled to resentencing. *Sours*, __ Mich App at __; slip op at 2-3. Moving on to the defendant's constitutional challenge, this Court held that "[b]ecause we conclude that OV 19 should have been scored at zero points and defendant is entitled to be resentenced, defendant's *Lockridge* issue is now moot, and we need not address it." *Id.* at __; slip op at 3. This approach is entirely consistent with our analysis.

[4] We note that the panel in *Sours* did not find it problematic, when addressing the evidentiary challenge, that the lower court had engaged in judicial fact-finding in scoring OV 19. See *Sours*, __ Mich App at __; slip op at 1-2.

guidelines *advisory*, not by eliminating judicial fact-finding. As explained by the Court in *Lockridge*, 498 Mich at 364-365:

> Th[e] deficiency is the extent to which the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables . . . that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e., the "mandatory minimum" sentence . . . .

> To remedy the constitutional violation, we sever MCL 769.34(2) to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory. We also strike down the requirement in MCL 769.34(3) that a sentencing court that departs from the applicable guidelines range must articulate a substantial and compelling reason for that departure.

> Consistently with the remedy imposed by the United States Supreme Court . . . ., we hold that a guidelines minimum sentence range . . . is advisory only and that sentences that depart from that threshold are to be reviewed by appellate courts for reasonableness. To preserve as much as possible the legislative intent in enacting the guidelines, however, we hold that a sentencing court must determine the applicable guidelines range and take it into account when imposing a sentence. [Citations omitted.]

That judicial fact-finding remains part of the process in calculating the guidelines is evidenced by the *Lockridge* Court's observation that its "holding today does nothing to undercut the requirement that the highest number of points possible *must be* assessed for all OVs, *whether using judge-found facts or not.*" *Id.* at 392 n 28 (latter emphasis added). This quote from *Lockridge* is consistent and reconcilable with the full *Lockridge* opinion; judicial fact-finding is proper, as long as the guidelines are advisory only.[5] Our point is further buttressed by the Supreme Court's following discussion:

---

[5] In *Blevins*, this Court, finding parts of *Lockridge* irreconcilable, indicated that judicial fact-finding "constitutes a departure." *People v Blevins*, __ Mich App __, __; __ NW2d __ (2016); slip op at 10 n 7. The *Blevins* panel relied on *People v Stokes*, 312 Mich App 181, 196; 877 NW2d 752 (2015), in reaching this conclusion, claiming that *Stokes* set forth this judicial fact-finding / departure distinction in reconciling *Lockridge*. *Blevins*, __ Mich App at __; slip op at 10 n 7. We do not read *Stokes* as even acknowledging a possible irreconcilable feature of *Lockridge*, let alone attempting to reconcile parts of *Lockridge*. The *Blevins* panel's conclusion that *Lockridge* contained language that was difficult to reconcile was predicated on footnote 28 in *Lockridge*, wherein the Court stated that all OVs must be assessed the highest number of points "whether using judge-found facts or not," and the *Lockridge* Court's comments on page 399 that, to show plain error, "a defendant must demonstrate that his or her OV level was calculated using facts beyond those found by the jury or admitted by the defendant." *Blevins*, __ Mich App at __; slip op at 9-10 and 10 n 7, citing *Lockridge*, 498 Mich at 392 n 28 and 399. We

First, the defendant asks us to require juries to find the facts used to score all the OVs that are not admitted or stipulated by the defendant or necessarily found by the jury's verdict. *We reject this option*. The constitutional violation can be effectively remedied without burdening our judicial system in this manner, which could essentially turn sentencing proceedings into mini-trials. And the United States Supreme Court . . . expressly rejected this remedy because of the profound disruptive effect it would have in every case[;] . . . "[i]t would alter the judge's role in sentencing." We agree. [*Lockridge*, 498 Mich at 389 (citation and parentheses omitted; emphasis added).]

Absent the use of an admission or stipulation or a jury's factual findings to assess the OVs, the only remaining avenue available to score the OVs would entail judicial fact-finding, which is of no constitutional consequence if the guidelines are merely advisory. Accordingly, we disagree with any contention that a trial court can only use facts determined by a jury beyond a reasonable doubt when calculating a defendant's OV score under the guidelines. This is in direct contradiction of the *Lockridge* Court's rejection of the defendant's argument that juries should be required to find the facts used to score the OVs. *Lockridge*, 498 Mich at 389.

At this juncture, we find it necessary to address the comments in the concurring/dissenting opinion, wherein our colleague indicates that she does not understand our analytical framework for evaluating "evidentiary" versus "constitutional" challenges and that it does not make sense to her. It appears that the concurrence/dissent is of the view that the only relevant inquiry relates to *Lockridge* and whether a *Crosby* remand is necessary. The concurrence/dissent fails to appreciate that, as mentioned earlier, aside from the constitutional challenge under *Lockridge*, defendant *separately* argues that there was inadequate evidence to support the scoring of the pertinent OVs. The concurrence/dissent conflates the evidentiary and constitutional challenges. The evidentiary challenge cannot simply be ignored, and in *People v Sours*, __ Mich App __, __; __ NW2d __ (2016), this Court proceeded exactly as we are doing here, resolving the evidentiary challenge first and then moving on to the constitutional challenge, which was rendered moot in *Sours* because resentencing was dictated in light of the successful evidentiary challenge. The issuance of *Lockridge* did not result in depriving a defendant from presenting a traditional evidentiary challenge to a trial court's scoring of the guidelines, even if the scoring was also constitutionally problematic under *Lockridge*; a defendant would be free to forgo the constitutional challenge or embrace it in conjunction with the evidentiary challenge. Stated otherwise, evidentiary challenges of OV scores relative to sentences imposed pre-*Lockridge* are not irrelevant or moot simply because the scoring may have violated constitutional

---

do not find any conflict in the language. As we discussed earlier in this opinion, footnote 28 of *Lockridge* indicated that judicial fact-finding continues to play a role in scoring the guidelines, and the language on page 399 of *Lockridge* merely provided the analytical framework for determining whether a defendant is entitled to a *Crosby* remand, given that the guidelines had been mandatory at the time of sentencing. We do not find that *Blevins* is controlling here, given that *Blevins* was strictly a case involving a constitutional challenge under *Lockridge*, and because the commentary in footnote 7 of the *Blevins* opinion was dicta.

protections recognized in *Lockridge*. And again, the remedies for successful evidentiary and constitutional challenges are distinct.[6]

Next, with respect to defendant's evidentiary challenge, the only OV that is *initially* pertinent is OV 3, which was assessed at 100 points. Defendant's total OV score was 155 points, placing him at OV level VI, which is the highest OV level in the class E grid applicable to the firearm offense for which he was convicted. MCL 777.16m; MCL 777.66. Indeed, a total OV score of 75 or more points is all that is needed to be placed at OV level VI. MCL 777.66. And OVs 1, 4, and 9, as assessed relative to defendant, add up to 45 points, which if subtracted from defendant's total OV score of 155 points, leaves a total of 110 points, keeping defendant at OV level VI. Thus, even if all three of these OVs were improperly assessed and should have been scored at zero points, it would not alter the guidelines range, making resentencing unnecessary. *Francisco*, 474 Mich at 89 n 8 ("Where a scoring error does not alter the appropriate guidelines range, resentencing is not required."). However, OV 3 was assessed at 100 points; therefore, it is necessary to examine the scoring of OV 3.

OV 3 addresses physical injury to a victim, and a score of 100 points is mandated where "[a] victim was killed," MCL 777.33(1)(a), so long as the "death results from the commission of a crime and homicide is not the sentencing offense," MCL 777.33(2)(b). Defendant contends that his conduct relative to the felon-in-possession conviction did not cause or result in anyone's death. See *People v Laidler*, 491 Mich 339, 345; 817 NW2d 517 (2012) ("Because the Legislature in MCL 777.33(2)(b) used the phrase '*results* from the commission of a crime,' it is clear that the defendant's criminal actions must constitute a factual cause of a death for purposes of OV 3."). OV 3 also provides that "[i]n multiple offender cases, if 1 offender is assessed points for death or physical injury, all offenders shall be assessed the same number of points." MCL 777.33(2)(a). Codefendant Johnson, who, as noted earlier, pleaded guilty during the trial to the charges against him and then testified on defendant's behalf, was assessed 100 points for OV 3 in an earlier sentencing.[7] The sentencing record in defendant's case is simply unclear

---

[6] Perhaps the concurrence/dissent believes that, for example, because an OV was scored on the basis of improper judicial fact-finding under *Lockridge* in the context of mandatory sentencing, any challenge to that particular OV score on the basis that there was generally insufficient evidence in the record to support the judge's OV assessment need not be addressed or is not viable, forcing sole consideration of the applicability of *Lockridge*. However, that view fails to recognize that the inadequacy of the evidence can serve as a separate appellate argument, with resentencing as the available remedy, or that argument can be made together with a *Lockridge* constitutional argument, as here, or a defendant could simply and solely present a constitutional challenge. It is a strategic decision to be made by the defendant. Our analytical framework is intended to give direction when both an evidentiary and a constitutional argument are made on appeal.

[7] Johnson's plea encompassed the crime of second-degree murder, which constitutes homicide, and thus he was not assessed 100 points for OV 3 relative to that crime, see MCL 777.33(2)(b), but guidelines for codefendant Johnson were also scored in regard to the offense of assault with intent to commit murder, and he was assessed 100 points for OV 3 on that crime.

regarding whether the trial court assessed 100 points for OV 3 on the basis of the multiple-offender provision, § 33(2)(a), or on the basis of a straightforward application of the facts pertaining to defendant's conduct, § 33(2)(b), or on both bases. Regardless, neither provision supports the assessment of 100 points for OV 3.

First, with respect to the multiple-offender provision, because defendant was acquitted of second-degree murder, assault with intent to commit murder, and felony-firearm, with the felon-in-possession conviction being based on evidence apart from the shooting, and because codefendant Johnson was convicted by plea on the crimes for which defendant was acquitted, this was not a multiple-offender case. See *People v Johnston*, 478 Mich 903, 904; 732 NW2d 531 (2007); *People v Morson*, 471 Mich 248, 260 n 13; 685 NW2d 203 (2004) (rejecting argument that "the multiple offender provision does not require a comparison of the OV scores for identical crimes," and noting that comparison is to be made to "OV scores received for a specific offense"). Had defendant been convicted of assault with intent to commit murder as was Johnson, then an assessment of 100 points for OV 3 would have been proper.[8] The multiple-offender provision in OV 3 was not implicated in this case.

Next, with respect to whether, looking solely at defendant's conduct, "[a] victim was killed," MCL 777.33(1)(a), and whether the "death result[ed] from the commission of a crime," MCL 777.33(2)(b), we cannot conclude that the death in this case resulted from or was factually caused by defendant's commission of the offense of felon-in-possession, *Laidler*, 491 Mich at 345.[9] "[T]he offense variables are scored by reference only to the sentencing offense, except where specifically provided otherwise." *People v McGraw*, 484 Mich 120, 129; 771 NW2d 655 (2009). OV 3 does not specifically provide otherwise; therefore, we can only take into consideration defendant's sentencing offense for purposes of scoring OV 3. See *People v Mushatt*, 486 Mich 934; 782 NW2d 202 (2010). The record reflects that defendant's conviction of felon-in-possession was based on the testimony of a witness who observed, after the shooting, a man wearing a white shirt holding a gun, along with the codefendant Johnson's testimony that defendant was wearing a white shirt at the time of the incident. There was no evidence, let alone a preponderance, establishing a causal connection between defendant's crime of felon-in-possession and Kirby's death. To the extent that the trial court relied on § 33(2)(b) in assessing 100 points for OV 3, it clearly erred. *Hardy*, 494 Mich at 438. On examination of the remaining provisions in OV 3 regarding life threatening, permanently incapacitating, bodily, or physical injuries, none would apply, considering the lack of a causal link tied to the felon-in-possession

---

[8] We note that the guidelines were not scored for codefendant Johnson regarding his conviction of felon-in-possession, considering Johnson's convictions on higher offenses. See *People v Lopez*, 305 Mich App 686, 690-692; 854 NW2d 205 (2014). Interestingly, had 100 points been the proper score for OV 3 on the basis of the multiple-offender provision, there additionally would not have been a constitutional or *Lockridge* problem, because the death or killing would have been established through Johnson's plea to second-degree murder. Also, defendant's gun possession was separate and apart from codefendant Johnson's possession and discharge of his firearm.

[9] Defendant did stipulate that he was a convicted felon when the shootings occurred.

offense. MCL 777.33(1)(c)-(e). And the error results in an alteration of the minimum sentence range, thereby entitling defendant to resentencing, *Francisco*, 474 Mich at 89, at which time he will receive the constitutional protection of advisory guidelines as dictated by *Lockridge*. As in *Sours*, __ Mich App at __; slip op at 3, because defendant is entitled to be resentenced, his constitutional challenge under *Lockridge* is now moot and need not be addressed.

The scoring of the remaining OVs now becomes relevant under our analysis for purposes of resentencing and the correct placement of defendant in the class E grid. With respect to OV 1, defendant's challenge of the 25-point assessment was waived at sentencing, *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000); however, defendant also presents an ineffective assistance claim on the matter, and we agree that counsel's performance was deficient in waiving a challenge to OV 1 and that defendant was prejudiced by counsel's error, *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001); *Francisco*, 474 Mich at 90 n 8. Twenty-five points is properly assessed for OV 1 when "[a] firearm was discharged at or toward a human being[.]" MCL 777.31(1)(a). OV 1's multiple-offender provision is not implicated for the same reasons set forth above in addressing the multiple-offender provision in OV 3. Further, "OV 1 is an 'offense-specific' variable; therefore, in scoring OV 1, [a] trial court [is] limited to 'considering the sentencing offense alone.' " *People v Chelmicki*, 305 Mich App 58, 72; 850 NW2d 612 (2014), quoting *McGraw*, 484 Mich at 127. Here, there was no evidence that defendant's possession of the gun, which was used to support the felon-in-possession conviction, entailed defendant discharging the weapon, let alone discharging it at or toward a human being. The trial court thus clearly erred in assessing 25 points for OV 1, defense counsel's performance in waiving an argument relative to OV 1 was deficient, and defendant was prejudiced because the waived error alters the minimum guidelines range, MCL 777.66. We do note that a five-point score for OV 1 is proper when "[a] weapon was displayed . . . ." MCL 777.31(1)(e). Given that resentencing is already necessary in this case, we direct the trial court on resentencing to entertain the question whether five points should be assessed for OV 1.[10]

With respect to OV 4, defendant was assessed 10 points, which is the proper score when "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). Because OV 4 does not specifically provide otherwise, we are limited to solely considering the sentencing offense of felon-in-possession in scoring OV 4. *McGraw*, 484 Mich at 129. The record contains no evidence that serious psychological injury occurred to a victim as a result of defendant being a felon and being seen carrying a gun after the shooting; OV 4 should have been scored at zero points. The trial court clearly erred in assessing 10 points for OV 4.

Finally, defendant was assessed 10 points for OV 9, which is the proper score for OV 9 when "[t]here were 2 to 9 victims who were placed in danger of physical injury or death[.]" MCL 777.39(1)(c). The *McGraw* Court specifically held that OV 9 can only be scored in reference to the sentencing offense. *McGraw*, 484 Mich at 133-134. In the instant case, defendant's commission of the offense of felon-in-possession, in and of itself, simply did not

---

[10] Even if five points is a proper score for OV 1, the resulting 20-point error in assessing OV 1, as opposed to a 25-point error, would still lower the minimum guidelines range, MCL 777.66.

place anyone in danger of physical injury or death.  Accordingly, the trial court clearly erred in assessing 10 points for OV 9, which should have been scored at zero points.

We affirm defendant's conviction, vacate his sentence, and remand for resentencing consistent with this opinion.  We do not retain jurisdiction.


/s/ William B. Murphy
/s/ Mark J. Cavanagh