# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DANTE LEMONT JOHNSON,

Defendant-Appellant.

UNPUBLISHED
July 13, 2017

No. 332585
Kalamazoo Circuit Court
LC No. 2015-000864-FC

Before: SAWYER, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right his convictions for felon in possession of a firearm (felon-in-possession), MCL 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). The trial court departed upward from the advisory minimum sentencing range and sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 10 to 25 years' imprisonment for the felon-in-possession conviction and to a consecutive term of 2 years' imprisonment for the felony-firearm conviction. Because the prosecutor presented sufficient evidence to support defendant's convictions and defendant is not entitled to resentencing, we affirm.

This case involves a shooting that occurred during a neighborhood feud between the "Church Street People" and the "Woodbury Street People," which resulted in the death of Orlando Walker. In particular, on July 6, 2014, defendant and several of the Church Street People attended a gathering at the home of Dena and Ervin Morrow. Several Woodbury Street People, including Walker, came to the Morrows' home uninvited. A physical fight ensued, and it continued until one of the Church Street People, Kenneth Langston, began shooting into the air. Once Langston began firing, other individuals also began shooting. The gunfire caused people to scatter, and Walker ran toward nearby Norway Street.

Langston went inside the Morrows' house with the gun. According to Langston's testimony, inside the home, defendant "snatched" the gun from Langston and ran out the back door toward Norway Street. Langston then heard the sound of multiple gunshots, coming from the direction of Norway Street. One of the other Church Street People, Donnell Davenport, saw defendant take the gun from Langston. Davenport described the gun as a silver and black .22 caliber handgun with a gold trigger. Davenport also testified that he saw defendant fire multiple gunshots in the direction of Norway Street and that he heard defendant say he was trying to kill

-1-

Damian Swindle, who had fled in the direction of Norway Street. After the shooting, defendant gave Davenport the .22 caliber gun. Davenport then went to a house a few blocks away, and defendant arrived there soon after. According to Davenport, defendant was "panicking" and he kept saying "I hope I didn't kill him." Davenport returned the .22 caliber gun to defendant.

During the shooting, Walker was shot in the chest, and he died as a result of his injuries. Walker was shot with a .22. Another individual was shot in the leg, also with a .22. Police recovered multiple casings and cartridges at the scene related to various types of guns, including .22 caliber, .40 caliber, 9mm and .38 special. Police never recovered the gun that fired the fatal shots. However, the prosecution presented evidence that, on July 23, 2014 and August 4, 2014, defendant attempted to sell a .22 caliber handgun on Facebook, though the photograph defendant posted was a generic Google image and not a picture of the .22 with a gold trigger.

Defendant was charged with open murder, felon-in-possession, and two counts of felony-firearm. The jury found defendant not guilty of murder and the felony-firearm charge related to the murder charge. However, as noted, the jury convicted defendant of felon-in-possession and felony-firearm. The trial court departed upward from the sentencing guidelines and sentenced defendant as noted above. Defendant now appeals as of right.

Defendant first argues that there was insufficient evidence to convict him of felon-in-possession and felony-firearm because the prosecution failed to establish that defendant possessed a firearm. In particular, defendant attacks the credibility of Langston and Davenport; and, defendant contends that the evidence was insufficient because he "was never found in possession of a firearm on July 6, 2014," the date on the felony information. According to defendant, at most, the proofs showed that, on dates other than July 6th, defendant posted images of a gun on Facebook, which he contends is insufficient to establish his possession of a firearm.

We review de novo a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). "We examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *Id.* at 196. In applying this standard, we "draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Cameron*, 291 Mich App 599, 613; 806 NW2d 371 (2011) (citation omitted.)

To establish the elements of felon-in-possession, the prosecution must prove that: (1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored under MCL 28.424." *People v Bass*, 317 Mich App 241; 893 NW2d 140 (2016). To maintain a conviction for felony-firearm the prosecution must prove that: (1) the defendant possessed a firearm, (2) during the commission or attempted commission of a felony. *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). Felon-in-possession may constitute the underlying felony for felony-firearm. See *People v Dillard*, 246 Mich App 163, 168-170; 631 NW2d 755 (2001).

On appeal, the only disputed element is whether defendant possessed a firearm. "Possession of a firearm can be actual or constructive, joint or exclusive." *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011). Possession can be shown by circumstantial as

well as direct evidence, including eyewitness testimony. See *People v Hill*, 433 Mich 464, 469; 446 NW2d 140 (1989); *People v Lopez*, 305 Mich App 686, 696; 854 NW2d 205 (2014). Possession is a question of fact for the jury. *People v Strickland*, 293 Mich App 393, 400; 810 NW2d 660 (2011).

In this case, a rational jury could conclude beyond a reasonable doubt that defendant possessed a firearm on the date in question. Langston testified that defendant grabbed the gun out of his hands and ran out the back door. Davenport testified that he actually saw defendant take the gun from Langston and fire three to four shots toward Norway Street. While defendant challenges the credibility of their testimony, this was a question for the jury and we will not interfere with the jury's determinations of witness credibility. *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014). Instead, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to establish defendant's possession of a firearm and to support defendant's conviction for felon-in-possession. Given that there was sufficient evidence to establish defendant's possession of a firearm and to support a felony conviction for felon-in-possession, it also follows that the prosecutor presented sufficient evidence to convict defendant of felony-firearm.

Defendant next argues that the trial court erred in scoring offense variable (OV) 1 at 25 points and in scoring OV 3 at 100 points. Defendant contends that these variables, which relate to aggravated use of a weapon and physical injury to a victim, are offense specific and thus they should not have been scored because the jury found defendant not guilty of murder and the felony-firearm charge related to murder. We disagree.

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (footnotes omitted).]

The scoring of OV 1 relates to the "aggravated use of a weapon," and it is properly scored at 25 points when "[a] firearm was discharged at or toward a human being or a victim was cut or stabbed with a knife or other cutting or stabbing weapon." MCL 777.31(1)(a). "OV 1 is an 'offense-specific' variable," meaning that, in scoring OV 1, "the trial court was limited to considering the sentencing offense alone." *People v Chelmicki*, 305 Mich App 58, 72; 850 NW2d 612 (2014) (quotation marks and citation omitted). However, when "considering the sentencing offense," the trial court "may properly consider all of defendant's conduct during that offense." *Id.* (quotation marks and citation omitted).

In this case, the trial court assessed 25 points for OV 1, finding that "defendant did shoot at or toward the crowd." This finding was not clearly erroneous. Davenport testified that he actually saw defendant take the gun from Langston and fire three to four shots toward Norway Street, saying that he was trying to kill Swindle, and the evidence showed that there were multiple people on Norway Street at the time defendant fired those shots. Additionally, Langston testified that defendant grabbed the gun out of his hands and Langston then heard shots being fired from behind the house, in the direction of Norway Street. Davenport testified that the

gun used by defendant was a .22, and two individuals were in fact shot by a .22 caliber gun. Based on this testimony, the trial court did not clearly err in finding by a preponderance of the evidence that defendant discharged a firearm toward a human being. Because this conduct occurred "during" defendant's sentencing offense of felon-in-possession, the trial court did not err by assessing 25 points for OV 1. See *Chelmicki*, 305 Mich App at 72.

The scoring of OV 3 involves "physical injury to a victim," and it is properly scored at 100 points when "[a] victim was killed," MCL 777.33(1)(a), provided that "death results from the commission of a crime and homicide is not the sentencing offense," MCL 777.33(2)(b). The relevant inquiry under OV 3 is whether the death "resulted" from defendant's criminal actions, i.e., whether defendant's criminal conduct is a "factual" or "but for" cause of death. *People v Laidler*, 491 Mich 339, 345; 817 NW2d 517 (2012). OV 3 is an offense-specific variable, "meaning we can only take into consideration defendant's sentencing offense for purposes of scoring OV 3." *People v Biddles*, 316 Mich App 148, 165; __ NW2d __ (2016). However, as noted, the court "may properly consider all of defendant's conduct during that offense." *Chelmicki*, 305 Mich App at 72 (quotation marks and citation omitted). And, because a preponderance of the evidence standard applies to the scoring of the sentencing guidelines, facts may be scored at sentencing which were not proven beyond a reasonable doubt for purposes of conviction.[1] *People v Ratkov*, 201 Mich App 123, 126; 505 NW2d 886 (1993).

In this case, the prosecutor argued at sentencing that, applying a preponderance of the evidence standard, the trial court could score 100 points for OV 1 based on Walker's death; and the trial court followed this reasoning, scoring OV 3 at 100 points and stating: "The standard that I'm using, by a preponderance of the evidence, supports the scoring of a 100-points under OV 3. That's what I'm saying based on all the evidence." Given the evidence presented in this case, this finding was not clearly erroneous. As discussed, at least two witnesses testified that defendant took a gun from Langston and fired it in the direction of Norway Street, which was where Walker was running when he was fatally shot. Davenport also heard defendant say that he was trying to kill Swindle, who was also running toward Norway Street. Moreover, Davenport

---

[1] Relying on post-*Lockridge* caselaw, defendant contends generally that it was error for the trial court to score offense variables when a jury has acquitted defendant of charges involving the conduct being scored. Insofar as defendant suggests that the trial court's fact-finding was constrained by the jury verdict, defendant's argument is without merit. "The constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself, it was judicial fact-finding in conjunction with *required* application of those found facts for purposes of increasing a *mandatory* minimum sentence range." *Biddles*, 316 Mich App at 158. *Lockridge* remedied this defect by making the guidelines *advisory*, not by eliminating judicial fact-finding and not by restricting the trial court's scoring decisions to facts determined by a jury beyond a reasonable doubt. *Id.* at 158, 161. In other words, when finding facts to score the guidelines, it remains true, even post-*Lockridge*, that a trial court's findings are by a preponderance of the evidence, such that the trial court may find facts at sentencing which were not proven to the jury beyond a reasonable doubt. See *id.* at 161. See also *People v Steanhouse*, 313 Mich App 1, 38; 880 NW2d 297 (2015).

identified the gun in defendant's possession as a .22, and Walker was killed by a .22. These testimonies are the same evidence that supported the sentencing offense; and, therefore, it is appropriate to consider this evidence in determining whether the victim's death had a causal connection to the sentencing offense. See *Biddles*, 316 Mich App at 165. Considering this evidence, the trial court did not clearly err by concluding that it was established by a preponderance of the evidence that Walker's death resulted from defendant's crime of felon-in-possession. *Laidler*, 491 Mich at 345. Accordingly, the trial court's assessment of 100 points for OV 3 was proper.

Finally, defendant argues that the trial court failed to consult the sentencing guidelines, failed to adequately explain the reasonableness and proportionality of the departure sentence, and ultimately imposed a sentence that was unreasonable and disproportionate. We disagree.

When a trial court imposes a sentence that departs from the now-advisory sentencing guidelines range, the sentence imposed must be reasonable. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). Reasonableness of a sentence is determined under the principle of proportionality standard set forth in *Milbourn*.[2] *Steanhouse*, 313 Mich App at 47-48. "Hence, appellate review of the sentence imposed is for abuse of discretion, to determine whether the sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Hyatt*, 316 Mich App 368, 423; 891 NW2d 549 (2016) (quotation marks and citation omitted). Factors to be considered under the proportionality standard include, but are not limited to: (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the defendant's potential for rehabilitation. *Steanhouse*, 313 Mich App at 46.

In this case, the sentencing guidelines provided an advisory sentencing range of 24 to 76 months' imprisonment.[3] The trial court departed upwards, sentencing defendant as noted above. Before sentencing defendant, the trial court stated,

> He is being sentenced as [a] 4th habitual offender. Just a very tragic situation. I don't think there was any rhyme or reason to the shooting by anyone out there that day, and we lost a life of Mr. Walker and that certainly has affected his family there.

---

[2] *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990).

[3] On appeal, defendant argues the trial court failed to consult the guidelines and to take them into consideration as required by *Lockridge*, 498 Mich at 391. However, such an argument is clearly without merit in view of the trial court's express reference to the applicable sentencing range as well as the court's acknowledgement of the advisory nature of the guidelines. While the trial court was required to consider the guidelines, the trial court had the discretion to depart from the advisory range, and defendant has not shown that the trial court failed to consult the guidelines merely because the trial court declined to sentence defendant within that range.

I am concerned, Mr. Johnson, in looking at your history. I will say that. You know, obviously, the continued use of guns. This isn't your first gun offense. So, that is a concern and there is a huge concern about the fact that you had possession of it. There's testimony that it was shot. Obviously, there wasn't a specific charge that went along with that one way or the other, and the verdict was what the verdict--what the jury determined.

I--I understand the guidelines. They're 24 to 76. They are advisory, obviously. I think that's been mentioned before and that's what the law is right now.

I'm going to sentence the defendant, obviously on Count IV. It is a 2-year mandatory sentence . . . consecutive in [sic] preceding the sentence in Count III.

In Count III, I'm going to follow the recommendation of the Department of Corrections [and] sentence him to 10-years to 25-years. . . .

Defendant argues on appeal that the trial court failed to explain the reasons for the departure sentence; and, analyzing the factors set forth in *Milbourn*, defendant contends that the trial court failed to impose a proportionate sentence because, (1) as to the seriousness of the offense, the jury found defendant not guilty of murder, and (2) defendant's criminal history was accounted for in the prior record variables, meaning that the trial court failed to identify facts not considered, or inadequately considered, by the guidelines. Contrary to defendant's arguments, we find that that the trial court did consider the proportionality factors set forth in *Milbourn* and the sentence imposed was not unreasonable.

Regarding the seriousness of the offense, this case is not—as defendant suggests—a case of mere possession of a firearm. Rather, as noted by the trial court, this case involved the use of a firearm and, in particular, a senseless shooting with tragic results: namely, Walker's death. While the jury found defendant not guilty of murder, the sentencing court was free to consider *all* the evidence admitted at trial, and this evidence showed that Walker's death resulted from the senseless shootings in which defendant participated. See *People v Shavers*, 448 Mich 389, 393; 531 NW2d 165 (1995); *People v Compagnari*, 233 Mich App 233, 236; 590 NW2d 302 (1998). We see nothing disproportionate in a 10-year sentence for conduct which resulted in the tragic and unnecessary loss of human life. Cf. *Shavers*, 448 Mich at 393. This is particularly true given defendant's lengthy history of criminality, including assaultive conduct and previous offenses involving guns. Although defendant's criminal history is, to some extent accounted for in the PRVs, given the facts of this case, the trial court reasonably emphasized defendant's criminal history and gun history. Cf. *People v Walden*, __ Mich App __, __; __ NW2d __ (2017) (Docket No. 330144); slip op at 6. His conduct in this case shows that, despite previous opportunities for rehabilitation, defendant has continued to possess, use, and attempt to sell firearms. Indeed, the trial court stated that it was following the recommendation of the Michigan Department of Corrections, and that recommendation, as set forth in the PSIR, was for a lengthy prison sentence because defendant "has proved time and time again that he is a danger to society." Overall, given the seriousness of the circumstances surrounding the offense and

defendant, the sentence imposed satisfied the principle of proportionality articulated in *Milbourn* and it was thus reasonable under *Lockridge*. See *Steanhouse*, 313 Mich App at 48. Accordingly, defendant is not entitled to resentencing. See *Lockridge*, 498 Mich at 392.

Affirmed.

/s/ David H. Sawyer
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering