*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RYAN WILLIAM SCHURZ,

        Defendant-Appellant.

UNPUBLISHED
August 27, 2020

No. 340420
Jackson Circuit Court
LC No. 16-004640-FH

Before: REDFORD, P.J., and METER and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted the trial court's sentencing guidelines scoring and the upward departure minimum sentence imposed by the trial court following defendant's guilty plea of the delivery of heroin less than 50 grams in violation of MCL 333.7401(2)(a)(iv).[1] The trial court sentenced defendant to 10 to 40 years' imprisonment as a second-offense controlled substance offender pursuant to MCL 333.7413, because defendant had a prior conviction of possession of heroin. We affirm.

## I. BACKGROUND FACTS

Around 8:30 p.m. on September 17, 2015, defendant and his friend, Caleb Page, met defendant's drug dealer from whom defendant purchased heroin. At some point during that evening, defendant injected some of the heroin and he gave Caleb some which he snorted. Defendant and Caleb spent the evening at defendant's house watching television. At around 10:30 p.m., defendant went to bed but about 15 minutes later he rose to use the bathroom and heard

---

[1] This Court denied defendant's initial application for leave to appeal and he sought relief from our Supreme Court which on November 27, 2019, in lieu of granting leave to appeal, remanded the case to this Court for consideration as on leave granted. *People v Schurz*, 505 Mich 872; 935 NW2d 355 (2019)

a gurgling or gasping sound downstairs. Defendant went downstairs to find Caleb on the couch not breathing with signs that he had vomited.

A 911 operator received an emergency call and dispatched first responders who arrived at the scene at 12:47 a.m. on September 18, 2015. The first responders' report noted the time of Caleb's collapse as 12:40 a.m. When they arrived at the scene, they found defendant in the driveway attempting to administer CPR to Caleb while on his phone with the 911 operator. Caleb appeared unresponsive and in full cardiac arrest. The first responders administered CPR and asked defendant if Caleb had used any drugs or alcohol. Defendant told them that he personally had not done any drugs or alcohol. He stated that he did not believe that Caleb had done any drugs or alcohol because he had not witnessed it, but he told them that Caleb had a drug addiction. Defendant also told the first responders that when Caleb collapsed he immediately called 911. A Jackson County Ambulance arrived and paramedics administered Narcan, an opiate antagonist, which had little effect. They took Caleb to the hospital where he was pronounced dead.

When Caleb's father noticed that Caleb had not come home the night before, he drove to Caleb's grandparents' house and asked them if they had seen him. They had not, so he went next door to defendant's house and asked defendant if he had seen Caleb. Defendant said that he had not seen him in weeks. Around 4:00 p.m. on September 18, 2015, the hospital informed Caleb's father of Caleb's death. Caleb's father also learned that defendant had been the one to call 911.

A toxicology lab tested a postmortem blood draw and a urine sample from Caleb and reported that he tested positive for several substances including a cocaine metabolite, benzoylecgonine, the antidepressant Zoloft and its metabolite, tranquilizers normally prescribed for anxiety, fentanyl,[2] opiates,[3] and naloxone.[4] Caleb died of an overdose.

The police investigated Caleb's death and interviewed defendant. He initially told the police that Caleb transacted for the heroin, but later he admitted that he purchased it from his dealer and shared it with Caleb. The Jackson County prosecutor charged defendant with delivery of a controlled substance causing death and delivery of heroin less than 50 grams. Defendant pleaded guilty to delivery of heroin less than 50 grams, a Class D offense, which carries a statutory maximum sentence of 20 years' imprisonment under MCL 333.7401(2)(a)(iv), and 40 years when doubled as required under MCL 333.7413.

To determine defendant's minimum sentence under the sentencing guidelines, the trial court considered the record evidence, defendant's plea, and defendant's presentence investigation report (PSIR). Defendant's counsel advised the trial court that he reviewed the PSIR with defendant and he did not object to any facts stated therein. The trial court assessed defendant 5 points for Prior Record Variable (PRV) 2 because of his prior felony conviction of heroin

---

[2] Fentanyl is a synthetic opioid. The therapeutic range for prescribing fentanyl is 1-3 nanograms/milliliter (ng/mL). The lab found 23.2 ng/mL in Caleb's blood sample and over 100 ng/mL in his urine sample.

[3] Heroin metabolites, morphine and 6-monoacetylmorphine, were found in Caleb's urine sample.

[4] Narcan is the brand name for naloxone.

possession, 100 points for Offense Variable (OV) 3 which requires assessing points for physical injury to a victim, and 10 points for OV 19 which requires assessing points for, among other things, a defendant's interference with the administration of justice. The sentencing guidelines recommended a minimum sentence of 19 to 38 months, which when doubled under MCL 333.7413, equaled a minimum sentence range of 38 to 76 months. The trial court, however, sentenced defendant to 10 years (120 months) to 40 years' imprisonment. Defendant moved for resentencing but the trial court denied his motion. Defendant now appeals.

## II. STANDARDS OF REVIEW

We review for clear error a sentencing court's scoring of sentencing guidelines variables. *People v Lockett*, 295 Mich App 165, 182; 814 NW2d 295 (2012). "A scoring decision is not clearly erroneous if the record contains any evidence in support of the decision." *Id*. (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which" we review de novo. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The sentencing court's factual determinations used for sentencing under the sentencing guidelines must be supported by a preponderance of the evidence and are reviewed for clear error. *People v Dickinson*, 321 Mich App 1, 20; 909 NW2d 24 (2017). A sentencing court's factual determinations are clearly erroneous if this Court is left with a definite and firm conviction that a mistake was made by the sentencing court. *Id*.

We review for an abuse of discretion whether a sentence is proportionate to the seriousness of the offense. *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011). We also review for an abuse of discretion the reasonableness of a trial court's departure sentence. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). We review for clear error a trial court's reasons for a departure from the legislative sentencing guidelines. *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008).

## III. ANALYSIS

Defendant argues that the trial court erred in its scoring of OV 3 and OV 19 on the ground that evidence did not support its scoring decisions, and if the trial court properly assessed points for those OVs, it still erred by imposing an unreasonable upward departure minimum sentence on the ground that OV 3 and OV 19 adequately addressed the factors that the trial court relied on as justification for its sentence. We disagree.

In *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015), our Supreme Court held that the sentencing guidelines are advisory only, but "remain a highly relevant consideration in a trial court's exercise of sentencing discretion," and sentencing courts must consider them when sentencing a defendant. We review for reasonableness a sentence that departs from the applicable guidelines and a defendant must only be resentenced if the trial court imposed an unreasonable sentence. *Id*. at 392. Trial "courts must justify the sentence imposed in order to facilitate appellate review." *Id*. The "principle of proportionality" set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), "requires sentences imposed by the trial court to be proportionate to the

seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 459-460 (quotation marks omitted). Sentencing courts must take into account the background of the offender and the nature of the offense. *People v Walden*, 319 Mich App 344, 352; 901 NW2d 142 (2017). A sentence that fulfills the principle of proportionality is reasonable. *People v Steanhouse*, 313 Mich App 1, 47-48; 880 NW2d 297 (2015), rev'd in part on other grounds 500 Mich 453 (2017).

Further, "even in cases in which reasons exist to justify a departure sentence, the trial court's articulation of the reasons for imposing a departure sentence must explain how the extent of the departure is proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 322 Mich App 233, 239; 911 NW2d 253 (2017), vacated in part on other grounds 504 Mich 969 (2019). "[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Milbourn*, 435 Mich at 661. "In determining proportionality, a court is allowed to consider whether certain factors were adequately encompassed by the guidelines or not encompassed by the guidelines at all." *People v Carlson*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 344674) (citation omitted); slip op at 6.

In *People v Dixon-Bey*, 321 Mich App 490, 524-525; 909 NW2d 458 (2017), this Court provided additional guidance for determining whether a departure sentence satisfies the principle of proportionality:

> Because the guidelines embody the principle of proportionality and trial courts must consult them when sentencing, it follows that they continue to serve as a "useful tool" or "guideposts" for effectively combating disparity in sentencing. Therefore, relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight. When making this determination and sentencing a defendant, a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been. [Quotation marks and citations omitted.]

OV 3 addresses physical injury to a victim. MCL 777.33(1); *People v Laidler*, 491 Mich 339, 343; 817 NW2d 517 (2012). One hundred points must be assessed under OV 3 "if death results from the commission of a crime and homicide is not the sentencing offense." MCL 777.33(2)(b); *Laidler*, 491 Mich at 343. When considering assessing points under OV 3, the trial court must determine whether the death "resulted" from defendant's criminal conduct by asking if his conduct served as a factual cause of a death, i.e., "but for the defendant's conduct, would the result have occurred?" *Laidler*, 491 Mich at 345 (citation omitted). OV 3 must be scored based on the sentencing offense alone. *People v Biddles*, 316 Mich App 148, 165; 896 NW2d 461 (2016).

A sentencing court may consider all of the evidence in the record, including the contents of the PSIR, plea admissions, and testimony presented at a preliminary examination. *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). A PSIR "is presumed to be accurate

and may be relied on by the trial court unless effectively challenged by the defendant." *People v Callon*, 256 Mich App 312, 334; 662 NW2d 501 (2003). "A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score." *People v Dickinson*, 321 Mich App at 21 (quotation marks and citation omitted). Although a "sentencing court may not base a sentence, even in part, on a defendant's failure to admit guilt," it may consider defendant's lack of remorse at sentencing. *Carlson*, ___ Mich App at ___ (citations omitted); slip op at 6.

In this case, defendant pleaded guilty to delivery of a controlled substance less than 50 grams. Defendant admitted that he purchased drugs from his dealer and shared a portion with Caleb who snorted it. Caleb died from an overdose. The toxicology lab reported that Caleb's blood tested positive for fentanyl nearly eight times the therapeutic range and his urine tested positive for fentanyl and opiates including the heroin metabolites, morphine and 6-monoacetylmorphine. The lab report also indicated that Caleb tested positive for cocaine metabolites and the presence of drugs typically prescribed for depression and anxiety. The trial court concluded that Caleb died from using the drugs defendant gave him. Defendant asserts that the trial court's conclusion rested on inaccurate or false information because he used the same heroin and did not die. Defendant contends without evidentiary support that the drugs he gave Caleb did not cause his overdose and death. The record, however, lacks any evidence that Caleb would have died without the use of the drugs given him by defendant. Although other drugs may have contributed to Caleb's death, the trial court could reasonably conclude that, but for the drugs defendant provided Caleb, he would not have died. The trial court drew reasonable inferences from the record evidence that established that the drugs defendant gave Caleb served as a cause in fact of his death. Defendant did not challenge the record evidence by the submission of any evidence that called into question the trial court's conclusion. Because defendant, an admitted longtime heroin addict, did not die from the heroin he injected, does not require the conclusion that the drugs he gave Caleb could not serve as a cause in fact of Caleb's death. The trial court properly rejected that argument and in so doing cannot be found to have based defendant's sentence on inaccurate or false information. Defendant admitted that he gave Caleb drugs that he purchased the night of his overdose and death and that Caleb snorted it. The trial court could reasonably infer from a preponderance of the record evidence, including the toxicology report's test results that found a significant presence of opiates and fentanyl in Caleb's bodily fluids after his death, that, but for Caleb's use of the drugs that defendant delivered to him, Caleb would not have died.

Defendant's score of 100 points for OV 3 fits squarely within the parameters of the statute. A victim was killed as specified under MCL 777.33(1)(a), which permitted the assessment of 100 points because homicide was not the sentencing offense. MCL 777.33(2)(b). The statute required the trial court to select the relevant option with the highest number of points. MCL 777.33(1). Accordingly, the trial court did not clearly err by assessing defendant 100 points for OV 3.

OV 19 addresses among other things the interference with the administration of justice or the rendering of emergency services. MCL 777.49. A sentencing court must assess 10 points in cases where the offender "otherwise interfered with or attempted to interfere with the administration of justice . . . ." MCL 777.49(c). If the offender "did not . . . attempt to interfere with the administration of justice or the rendering of emergency services by force or threat of force" the sentencing court must not assess the offender any points. MCL 777.49(d).

-5-

"[T]he plain and ordinary meaning of 'interfere with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey (On Remand)*, 303 Mich App 330, 343; 844 NW2d 127 (2013). As this Court observed in *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016), "OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." "Our Supreme Court has determined that the phrase 'interfered with or attempted to interfere with the administration of justice' is broader than the concept of obstruction of justice and that conduct subject to scoring under OV 19 'does not have to necessarily rise to the level of a chargeable offense . . . .' " *People v Passage*, 277 Mich App 175, 179-180; 743 NW2d 746 (2007) (citation omitted). "Conduct that occurs before criminal charges are filed can form the basis for interference, or attempted interference, with the administration of justice, and OV 19 may be scored for this conduct where applicable." *People v Barbee*, 470 Mich 283, 288; 681 NW2d 348 (2004); *Hershey*, 303 Mich App at 344.

In this case, the record indicates that defendant, despite knowing that Caleb used the controlled substances that defendant shared with Caleb the night of his death, failed to honestly answer the 911 dispatcher and the first responders' questions. Defendant told the first responders only that Caleb possibly used drugs but denied witnessing his doing any drugs. Defendant later admitted to the police that Caleb overdosed inside defendant's house while on the couch. Nevertheless, when the first responders arrived, they found Caleb in the driveway. The trial court could reasonably deduce from defendant's admissions to the police and the fact that first responders found Caleb lying on the driveway that defendant moved Caleb's body from inside the house to the driveway, and thereby disturbed the crime scene. From this evidence, the trial court could reasonably conclude that defendant attempted to avoid being caught and held accountable for the sentencing offense. *Sours*, 315 Mich App at 349.

The record also reflects that on September 22, 2015, before being charged with any offenses, defendant initially lied to the police during their investigation by telling them that Caleb arranged the drug transaction. Only after being confronted with cell phone records which clearly demonstrated Caleb had no contact with a drug dealer on the day in question did defendant later admit that he arranged the drug transaction. In so doing, defendant attempted to avoid being caught and held accountable for the sentencing offense. *Id*.

Defendant also admitted that he personally injected the heroin and that Caleb snorted it. On September 23, 2015, a police detective interviewed defendant who afterward wrote and signed a statement in which he admitted that he purchased heroin from a dealer named "Red." Further, during the course of the investigation defendant initially agreed to assist the investigation regarding the dealer but ultimately interfered with that investigation resulting in discontinuing it for lack of defendant's reliability. The prosecution authorized issuance of a warrant on May 20, 2016, charging defendant with the commission of two controlled substance offenses. A preponderance of the evidence established that defendant interfered with the administration of justice by lying to the police during the investigation of Caleb's death. Such interference with the administration of justice warranted assessment of 10 points for OV 19. The trial court did not base its sentencing decision on false or inaccurate information as claimed by defendant. Ample evidence in the record supported the trial court's findings and conclusions based upon reasonable inferences drawn from the record evidence. Defendant has failed to establish that the trial court's factual determinations

were clearly erroneous. The trial court, therefore, properly assessed defendant 10 points for OV 19.

Because the trial court did not err by assessing points for OV 3 and OV 19, defendant's contention that a scoring error occurred lacks merit. The trial court did not clearly err by assessing points for these OVs.

Defendant alternatively argues that the trial court could not impose an upward departure sentence because OV 3 and OV 19, if scored correctly, adequately covered defendant's conduct. We disagree.

Although OV 3 addresses physical injury to a victim, it does not factor in every aspect of the offense defendant committed in this case. The trial court reflected upon the evidence and noted that defendant delivered the drugs to his best friend with whom he had a relationship since a child. Defendant's friend died from an overdose. The record reflects that defendant committed an unfathomable display of a callous disregard for the safety of his best friend. The trial court concluded that the delivery of the drugs by defendant caused his friend's death. OV 3 only considers that a death resulted from the commission of the offense, but does not factor in the significance of the offense and the offender's relationship to the decedent. Caleb's death did not result from an arm's-length transaction between two strangers. The facts relied upon by the trial court that OV 3 does not consider as part of the assessment of points for OV 3, provided justification for imposing an upward departure sentence. OV 3 did not adequately cover defendant's conduct.

Although OV 19, MCL 777.49(c), addresses interfering with the administration of justice, it does not require assessing points for interfering with the rendering of emergency medical services. *People v Portellos*, 298 Mich App 431, 450-451; 827 NW2d 725 (2012), overruled on other grounds, *People v Calloway*, 500 Mich 180, 188; 895 NW2d 165 (2017). The record reflects that defendant failed to provide truthful information to the 911 dispatcher and the first responders. He merely intimated that drugs possibly had been involved when he knew for a fact that Caleb snorted the drugs that he provided to Caleb. The record reflects that defendant attempted to protect himself first by subterfuge. Had defendant told the 911 dispatcher and the first responders the truth, the first responders may have been able to immediately render more appropriate emergency services.[5] Defendant's interference with the rendering of emergency services could not be scored under MCL 777.49(c), but the trial court could consider such facts for its imposition of an upward departure sentence. Because neither OV 3 nor OV 19 adequately addressed defendant's conduct

---

[5] The record also reflects that defendant told the police in his interview that he found Caleb unresponsive at 10:45 p.m. and immediately started CPR and called 911. The first responders' report, however, indicates that the 911 operator received the call and dispatched the first responders to the scene after midnight. In that interim period, the record reflects that defendant moved Caleb's body outside the house onto the driveway. From this evidence, the trial court could find that, not only did defendant attempt to avoid being caught and held accountable for the sentencing offense, but he hindered the rendering of emergency services to his dying friend.

-7-

in relation to the offense, the trial court could appropriately consider such conduct and rely upon it to impose a sentence that departed upward from the sentencing guidelines.

Defendant contends that the upward departure sentence imposed by the trial court lacked reasonableness. Defendant challenges the adequacy of the reasons articulated by the trial court for its upward departure. The record reflects that, in addition to considering the factors which warranted the sentencing guidelines scoring, the trial court also considered record evidence and found that defendant's conduct resulted in the death of his best friend and that he lied to the first responders which interfered with the rendering of emergency services to his friend. The trial court analyzed defendant's conduct and his criminal history. Although the prosecution initially charged defendant with delivery of a controlled substance causing death, defendant pleaded guilty only to the delivery of a controlled substance less than 50 grams. Even though defendant was not convicted of the more serious offense, the trial court could consider the criminal activity for which no conviction resulted if supported by reliable evidence. *People v Lawrence*, 206 Mich App 378, 379; 522 NW2d 654 (1994). In this case, reliable evidence supported the trial court's conclusion that defendant's delivery of the controlled substance caused Caleb's death. Accordingly, the trial court could properly rely on the criminal activity of which the trial court did not convict him.

The record also reflects that evidence established that, despite his earlier conviction of possession of heroin and the efforts made to assist defendant to rehabilitate and overcome his addiction, defendant failed to do so and never took responsibility for his actions. Instead, he flaunted the law, purchased heroin, gave it to his best friend who used it and suffered a fatal overdose. Accordingly, the trial court could properly rely on defendant's refusal to comply with measures to rehabilitate that led to his commission of more serious criminal activity in this case. The trial court's reasons for imposing an upward departure sentence were supported in the record and not adequately addressed by the sentencing guidelines. Therefore, the trial court did not err by imposing a sentence that departed upward from the minimum sentence range calculated under the sentencing guidelines.

The trial court also considered defendant's egregious conduct of lying the morning of Caleb's death to Caleb's distraught father about Caleb's whereabouts. Defendant knew that Caleb suffered an overdose at his house, that emergency medical providers failed to revive him, and that they took Caleb to the hospital. Incredibly, defendant chose to lie directly to the face of the father of the person he described as one of his best friends while that father furtively searched for his son. Defendant told Caleb's father that he had not seen him for weeks and left Caleb's father in the dark only to learn of his son's death from the hospital late that afternoon.

Additionally, when interviewed for the preparation of his PSIR, defendant expressed no remorse and begrudgingly remarked, without taking personal responsibility, that his giving drugs to Caleb apparently constituted delivery of a controlled substance. The record also reflects that defendant never truly took responsibility for Caleb's death or expressed remorse when given the opportunity at his sentencing hearing. When the trial court asked if defendant wished to say more in response to its summary of some of the facts it considered significant, defendant offered, "That it was just supposed to be a social gathering and casual using drugs, like it had been so many other times before. In this case, that–that wasn't the norm." Defendant's submissions to the trial court also indicated that he largely blamed Caleb for his death and minimized the seriousness of his own conduct. The sentencing guidelines do not account for defendant's conduct in this regard but the

trial court could reasonably rely upon such facts to fashion an appropriate sentence in consideration of the seriousness of the offense and the offender. *Carlson*, ___ Mich App at ___; slip op at 6.

Defendant also asserts that the sentence imposed by the trial court violated public policy because persons are encouraged to call 911 and the Michigan Legislature amended MCL 333.7403 to provide immunity to persons who seek emergency medical services for themselves or others who are incapacitated because of drug overdose. Defendant acknowledges that the amendment has no retroactive application to his case, but he nevertheless asserts that the mere fact that he called 911 should have garnered him leniency and not an upward departure sentence. Defendant also suggests that he simply could have fled the scene and evaded liability completely but stayed and called 911 which mitigated against the imposition of an upward departure sentence. Defendant's argument lacks merit.

The record indicates that defendant waited before calling 911, moved the unresponsive Caleb from inside the house on the couch to the driveway, then called 911, and during that critical call failed to tell the dispatcher that he knew that Caleb snorted the drugs that he provided to Caleb. Even if public policy favors giving immunity to persons who report another person's overdose, the record in this case reflects that defendant failed to immediately seek the emergency services Caleb desperately needed. When he finally called 911, he failed to inform the 911 operator of the truth and when questioned by the first responders he continued to feign ignorance of the fact that Caleb used the heroin defendant gave him before he overdosed.

Defendant's actions and inactions on the tragic night in question fell far short of the type of conduct the new statutory safe harbor is designed to protect. The trial court correctly found defendant's argument in this regard unavailing.

Defendant argues that the trial court failed to explain why it imposed an upward departure of 44 months in excess of the 76-month maximum minimum sentence calculated under the guidelines with the double drug offense penalty required under MCL 333.7413(1). We disagree.

A sentencing court is not required to give substantial and compelling reasons to impose a sentence above the advisory guidelines range, *Carlson*, ___ Mich App at ___; slip op at 6,[6] it nevertheless should state why it exceeded the guidelines to the extent that it has

In this case, the trial court appropriately analyzed the record evidence and articulated reasons for imposing a sentence that departed upward from the range calculated under the guidelines which it correctly doubled under MCL 333.7413(1).

Throughout the sentencing process, the trial court repeatedly observed the specific facts of record, which were either not considered by the sentencing guidelines or which while considered appeared in this case in multiples of two, three, or more times.

---

[6] See also *Lockridge*, 498 Mich at 391-392; *Steanhouse*, 500 Mich at 470; *Walden*, 319 Mich App at 351.

-9-

In imposing sentence, the trial court stated:

> *The Court*: . . . Mr. Schurz, this is one of the most tragic drug heroin cases I've seen in a long, long time . . .
>
> But Mr. Schurz, I've really got to look at what we call in criminal law your criminal level of culpability, your—your mens rea, and to do that I would instruct a jury, if we had a trial in this matter, that they are to look at your actions before the crime, during the crime and after the crime. Because that's how I got to figure out what's going on with your—with your state of mind at the time that you delivered heroin to your best friend that you'd known since elementary school, and then—then he dies, he's dead and then you take his body out of the house, you get rid of incriminating evidence at the scene. I don't know what your intention was there, to act like he maybe just overdosed somewhere else?
>
> And then at every step of the way you made calculated decisions to lie and lie and lie. You first of all lied to his father about the whereabouts of his own son knowing what had happened, then—then when the first—even before that, when the—when the first responders are there and your best friend's laying there in full cardiac arrest, you go, hey, he's—he's—(undecipherable)—heroin, man, you know, I want—I want you to know exactly what you're dealing with here. Because those paramedics ultimately send a second team in there, but you didn't man up, you didn't take accountability. In fact, you didn't provide that critical information at the time when it was most needed because you were concerned about you.
>
> And then later on, you know, when the police want to talk with you, you know, you—you kind of—you're—you're doing everything you could do not to take accountability for what you did, including lying to the detective. Of course, it's—it's an experienced detective/sergeant, ultimately, you know, he confronts you with enough of the facts and finally at the very end you come clean about the heroin.
>
> Then, they give you an opportunity to go after the dealer. I mean, who we really want to get, Red (ph), and what do you do? You—they end up getting you out on bond, end up getting you out of jail, you end up—and apparently at some point you're so sneaky that you ditch your police tail and tell them later on you had something on in the oven and you shook the cop tail and they think, as Mr. Mehalco says, torpedoed the attempt to get the dealer. We think you—they think you alerted Red, the main dealer, and so you wouldn't even cooperate with that.
>
> Now, that might have put you in a lot better position with respect to sentencing today had you cooperated with the authorities. So now, Red, the dealer, he's still out there somewhere and he's gonna continue spreading his poison out there and probably killing some more people. But—but did Mr. Schurz step up to the plate? Did you follow through with your agreement? No.
>
> \* \* \*

So, the court's considered the guideline range. And, you know, and frankly, I was—would—would Mr. Schurz be somebody appropriate for the boot camp program? I thought about that. You know, should I just give him three years and leave that up to the Department of Corrections? But you know what, Mr. Schurz, had maybe you come forward, taken full responsibility, showed some really genuine remorse at the scene, even at the sentencing, I might have done that. But I don't think you did that at all.

And in the end, you definitely did what they charged you with, you delivered heroin to your best friend and it killed him. Let's not focus on the—and I'm not saying that Caleb wasn't struggling with some issues, but he's obviously functional enough to finish a college education, an Economics degree from Michigan State University, so I got—I got to believe he had a pretty high level of functionality. Now, were you an enabler with him? Absolutely. I mean, but I just can't even wrap my mind around the idea of a friend taking another friend heroin.

And then I can't even begin to wrap my mind about knowing that you caused his death lying to the—lying to the father, lying to the first responders, lying to the detective and then torpedoing the efforts to find the real dealer. And I don't even need to get what you were trying to do to shake down your dad for all this money. What was that about? Was that—were you just gonna leave the jurisdiction? Were you gonna go out and get some more heroin before I sentenced you? What were you gonna do?

*Mr. Schurz*: No, I was not.

*The Court*: Well, you're—you're going to the Department of Corrections for ten (10) years to forty (40) years, credit for a hundred and thirty-three (133) days. You've got a decade to sit there in prison and think about the death of your best friend. But you know the—the good thing for you is, you get—is if you're good in prison you get to get out at the age of 36. Caleb's dead. He's not ever gonna be around again and their family's gonna live with the tragedy of that forever.

You know, yeah, it—it exceeds the sentencing guidelines, but—but I think the whole presentation by the People, all the aggravating circumstances that I've already outlined as part of my sentencing, and I certainly am considering those with respect to the proportionality of the sentence, but you're gonna do ten (10) years to forty (40) years in the Department of Corrections and—with the credit for the hundred and thirty-three (133) days served . . .

\* \* \*

Although I've given a departure sentence from the guidelines, the guidelines are clearly only advisory and I've clearly detailed very specifically my reasons for the proportional departure that the court has set forth in its sentence.

-11-

Reviewing the entire record, we do not find the trial court committed clear error in articulating its reasons for imposing a sentence outside of the legislative sentencing guidelines range. *Smith*, 482 Mich at 300.

## IV. CONCLUSION

The trial court did not err by assessing points for OV 3 and OV 19, did not base its sentencing decision on inaccurate or false information, did not err by imposing an upward departure sentence in this case, and adequately articulated its rationale for the extent of the upward departure.

Affirmed.

/s/ James Robert Redford
/s/ Patrick M. Meter
/s/ Colleen A. O'Brien